**Stewart R. FLINK, Appellee,**

v.

**Dennis V. CARLSON,**

**Goldman, Sachs & Co., Appellant.**

**No. 88–5049.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1988.

Decided Aug. 24, 1988.

Ida C. Wurczinger, Washington, D.C., for appellant.

Evan L. Gordon, New York City, for appellee.

Before ARNOLD, JOHN R. GIBSON and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The issue before us is whether a securities brokerage house, against whom a customer has initiated arbitration proceedings, is entitled to compel its registered representative to submit to arbitration in the same tribunal of the brokerage's third party claim against him, even though the separate contracts of the customer and the representative name different arbitral bodies. Stewart Flink was a registered representa-

tive for Goldman, Sachs & Co., a securities brokerage house. While working for Goldman, Sachs, Flink handled the account of Dennis V. Carlson, who signed agreements to submit any disputes he had with Goldman, Sachs to arbitration. A dispute arose, and Carlson initiated arbitration against Flink and Goldman, Sachs. Goldman, Sachs asserted a crossclaim against Flink for indemnity or contribution. Flink sued in the district court [1] to stay the arbitration as to him on the grounds that he was not a party to the arbitration agreements. The district court stayed the arbitration as to Flink, and Carlson dropped his claim against Flink. Goldman, Sachs appeals, arguing that Flink is bound by the arbitration clause.

Carlson, a Minnesota resident, opened his account with a Goldman, Sachs' Chicago office in 1985. At that time he signed two preprinted form letters headed: "To: Goldman, Sachs & Co." Both letters were in the form of offers by Carlson that Goldman, Sachs accepted by opening accounts for Carlson. On the first letter (concerning opening a margin account), there was a space for Carlson's signature, but no signature purporting to bind Goldman, Sachs. The form did contain a blank for the "Registered Representative Receiving Account," in which Flink signed his name, but this blank was headed by boldface type characterizing the signature as "For Goldman, Sachs & Co. use only." The second agreement (concerning opening cash accounts) had no signature by anyone other than Carlson.

Both letters had arbitration clauses providing:

[A]ny controversy between you [Goldman, Sachs] and Customer arising out of or relating to this agreement or the accounts established hereunder, shall be settled by arbitration, in accordance with the rules then obtaining of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association or the Board of Arbitration of the New York Stock Exchange, as Customer may elect.

J.A. at 11, 13.

The letters also stated: "This agreement is binding upon and inures to the benefit of you [Goldman Sachs], Customer, and our respective legal representatives, successors and assigns." *Id.*

Flink has executed a Uniform Application for Securities Industry Registration under which he is obligated to submit to National Association of Securities Dealers or New York Stock Exchange arbitration of any claims against him by a customer or his employer arising out of his employment as a registered representative.

Carlson commenced an arbitration proceeding before the AAA against Flink and Goldman, Sachs complaining of various improprieties in the handling of his accounts. Flink filed suit in the district court seeking a stay of the arbitration as to him on the grounds that he was not a party to the arbitration agreements. Goldman Sachs filed a cross-claim against Flink in the arbitration, and Flink supplemented his petition to request a stay of the cross-claim as well. The district court granted Flink a stay of the arbitration as to him, and Carlson dismissed him from the arbitration. Goldman, Sachs appealed and moved for a stay of the entire arbitration pending resolution of the appeal; the district court denied the motion, Order of January 29, 1988, but we granted the stay. Order of February 29, 1988.

■ We initially note that since the only relief Flink sought in the district court was stay of the arbitration, and the district court granted this relief, there is nothing further for the district court to act on, and the court's order is thus final under 28 U.S.C. § 1291 (1982). *Park South Hotel Corp. v. New York Hotel Trades Council and Hotel Ass'n,* 705 F.2d 27, 30 (2d Cir. 1983). *See generally, Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

460 U.S. 1, 103 S.Ct. 927, 933–34, 74 L.Ed.2d 765 (1983).

■ Beginning from the axiom that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,' " [2] *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)), there are no grounds to compel Flink to arbitrate Goldman, Sachs' claims before the AAA.

First, Flink is not a party to the letter agreements. Flink did not sign the cash account letter at all. His signature appears on the margin account letter, but the blank he signed is titled "For Goldman, Sachs & Co. use only" and is thus labeled to show that it is not for the purpose of binding a party to an agreement with the customer, but rather for some informational purpose of Goldman, Sachs. At any rate, Flink signed the margin account letter as "Registered Representative Receiving Account"; even if Flink's signature had not been labeled as "For Goldman, Sachs & Co. use only" and had instead indicated assent to the terms of the letter, it would only have had the legal effect of binding Goldman, Sachs, not Flink personally. Signing an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally. *See Interocean Ship. Co. v. Nat'l Ship. and Trading Corp.*, 523 F.2d 527, 538 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); Restatement (Second) of Agency § 320 (1958).

Goldman, Sachs argues that other courts have considered agreements similar to those in this case to "encompass" the registered representative. However, Goldman, Sachs cites only cases in which courts held registered representatives to be third party beneficiaries of arbitration agreements between their employers and customers. *E.g.*, *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir.1986); *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 968 n. 11 (S.D.N.Y.1987), *aff'd*, 847 F.2d 834 (2d Cir.1988); *Brick v. J.C. Bradford & Co.*, 677 F.Supp. 1251, 1257 (D.D.C. 1987); *Brown v. Dean Witter Reynolds*, 601 F.Supp. 641, 644 (S.D. Fla. 1985), *rev'd*, 804 F.2d 129 (11th Cir.1986). *See also Nesslage v. York Securities, Inc.*, 823 F.2d 231, 233–34 (8th Cir.1987). These cases are not determinative, since mere status as a third party beneficiary (or receipt of benefits) does not bind the beneficiary to perform duties imposed by the contract.[3] *See Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir.1985). *Cf. ATSA v. Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir.1983) (president of company not obligated to arbitrate claim against him by virtue of arbitration agreement between his company and third party), *modified on other grounds*, 754 F.2d 1394 (1985).

Goldman, Sachs argues that the language in the agreements purporting to

**2.** Despite the district court's conclusion that state law governs the question of who is a party to the arbitration agreement, slip op. at 5, the parties assume without discussion that federal law applies. Actually, the question of what persons are bound by an arbitration agreement concerning interstate commerce is a question of federal law under the Federal Arbitration Act, 9 U.S.C. § 2 (1982); *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). But since that question involves the "general law" of contracts and agency, federal courts look to state law in shaping federal law. *See, e.g., I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 400 (8th Cir.1986); *Hartford Financial Systems, Inc. v. Florida Software Systems, Inc.*, 550 F.Supp. 1079, 1086–87 (D.Me.

1982), *appeal dismissed*, 712 F.2d 724 (1st Cir. 1983); *In re Farkar Co. and R.A. Hanson Disc., Ltd.*, 441 F.Supp. 841, 844–45 (S.D.N.Y.1977), *modified on other grounds*, 583 F.2d 68 (2d Cir.1978), *modified*, 604 F.2d 1 (2d Cir.1979); *Wells Fargo Bank Internat'l Corp. v. London S.S. Owners' Mut. Ins. Ass'n*, 408 F.Supp. 626, 628 (S.D.N.Y.1976).

**3.** *Letizia* contains dictum to the contrary. 802 F.2d at 1187–88.

Of course, if the third party beneficiary seeks to enforce the contract, he will be bound by the contract's limitations, *e.g., Trans–Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 378 (D.C. Cir.1976), but this is not our case.

bind Goldman, Sachs' "legal representatives" somehow makes Flink a party. Even assuming that Carlson and Goldman, Sachs intended by the use of this language to bind Flink to their contracts,[4] they could not bind him without Flink manifesting his agreement in some way. *See Abraham Zion Corp.*, 761 F.2d at 103.

The agreements only provide for arbitration of the *customers'* disputes with Goldman, Sachs. Under Goldman, Sachs' theories, they also require that Flink submit to arbitration of the *customers'* claims against him. But Carlson, the customer, dismissed his claim against Flink. The only claim now asserted against Flink is by Goldman, Sachs. Nothing in Carlson's account agreements provides that Flink would be obliged to arbitrate Goldman, Sachs' claims against him. *See Del E. Webb Constr. v. Richardson Hospital Authority*, 823 F.2d 145, 148 (5th Cir.1987) (even though contractor and architect had both agreed to arbitrate disputes with owner, court could not force architect to arbitrate its third-party claim against contractor).

Goldman, Sachs argues that since Flink has conceded that he is obligated to submit to NASD or NYSE arbitration of Goldman, Sachs' claims against him, the court can require him to submit to AAA arbitration. Goldman, Sachs also makes policy arguments about the possibilities of inconsistent results and the inefficiency of having two proceedings instead of one, and raises the spectre of wide-spread disruption of securities industry arbitration. The short answer to all these arguments is that we cannot order Goldman, Sachs' two adversaries to arbitrate in the same forum without contracts binding them to do so. The Goldman, Sachs form contracts at issue here simply did not provide for the result Goldman, Sachs desires. If Goldman, Sachs has painted itself into two corners of the same room, it was with its own paint and its own brushes.

The judgment of the district court is affirmed and we vacate the stay this court ordered on Goldman, Sachs' motion on February 29, 1988.

---

4. The language appears to have been included to cover the situation in which a third party claims rights or owes duties *derived through* a party to the contract, *e.g.*, an executor, trustee or corporate successor. In this case Carlson sought to hold Flink liable in his own right, not because of any action by Goldman, Sachs. Therefore, it is arguable that the language does not refer to Flink.