**TRACTOR–TRAILER SUPPLY CO., et al., Plaintiffs/Respondents,**

v.

**NCR CORP., et al., Defendants/Appellants.**

**No. 64257.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 5, 1994.

Thomas B. Weaver, St. Louis, Todd B. Carver, Dayton, OH, for defendants-appellants.

Gary A. Growe, Clayton, Ramon J. Morganstern, St. Louis, for plaintiffs-respondents.

GRIMM, Presiding Judge.

Plaintiffs sued defendants seeking damages in connection with the purchase of a computer system. Their claims were based on fraud, negligent misrepresentation, and breach of warranty. In response, defendants filed a motion seeking to compel arbitration and stay court proceedings as to all claims.

The trial court overruled this motion. Defendants appeal; we reverse and remand. We direct the trial court to enter an order compelling plaintiffs to arbitrate all claims.

## I. Background

Plaintiffs consist of four corporations and a general partnership. The corporations are Tractor–Trailer, Precision Rebuilders, Midway Wheel, and Cape Tractor–Trailer. H.P. Bley, Jr. and five others do business as Executive Investments, a general partnership.

The petition and attached exhibits disclose the following. H.P. Bley, Jr. is the president of Executive Investments and Tractor–Trailer. In 1986, plaintiffs' representatives and NCR's representatives had extensive discussions concerning the "purchase of a 'turnkey' computer system." The "Computer System would be required to serve the integrated computer needs of all of the plaintiffs." These meetings occurred at Tractor–Trailer's office and at NCR's St. Louis office.

During these discussions, plaintiffs' representatives advised NCR that Executive was affiliated with each of the other plaintiffs. Executive, a leasing company, acquires and leases various assets required by the corporations. Among other things, NCR represented that the "five-year cost of ownership would be virtually the same as for the [four corporations'] existing computer system."

On December 2, 1986, H.P. Bley, Jr., in his capacity as president, signed four documents.

1. Product and Services Sale Order Record. This order was for computer equipment with a net price of $178,476.00. This document reflects that the items were sold and billed to Executive, 2525 Natural Bridge Road, but were to be shipped to Tractor–Trailer, 2525 Natural Bridge Road. It provides that the "furnishing of equipment, programs, and/or services specified herein shall be pursuant to the terms of the Universal Agreement entered into by NCR and Customer."

2. Universal Agreement. This agreement was also titled "Continuing Agreement for Equipment and Services." It reflects that the customer is Executive. Paragraph 19 of this document provides for arbitration of all disputes.

3. Product and Services Sale Order Record. This order is identical to the one described in paragraph 1; with one excep-

tion. This document reflects that the items were sold and billed to Tractor–Trailer, as well as shipped to Tractor–Trailer, all at the 2525 Natural Bridge address.

4. Universal Agreement. This agreement is virtually identical to the one identified in paragraph 2. It reflects the customer is Tractor–Trailer. An NCR representative signed this document on January 21, 1987.

Each Universal Agreement stated that its "provisions are intended to state all of the rights and responsibilities between NCR and Customer." Also, each provided:

19. DISPUTES—Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR to Customer, shall be settled by arbitration.

None of the other three plaintiffs—Precision Rebuilders, Midway Wheel, or Cape Tractor–Trailer—signed any document that is before us. Nevertheless, the computer system was installed, beginning in the fall of 1987. It "generally failed to operate as an integrated network system" for plaintiffs. Plaintiffs could not and did not discover the "fraud" until September, 1989; they filed their petition on February 9, 1993.

As indicated, defendants moved for an order to compel arbitration and stay court proceedings. The trial court denied this motion; defendants appealed. Plaintiffs now concede that defendants are entitled to compel Tractor–Trailer to arbitrate its dispute. Thus, they acknowledge that the trial court's order "should be reversed—only on that limited ground."

## II. Scope of Agreement to Arbitrate Claims

■ The issue here is one of law and is limited to the question of who is bound by the arbitration clause in the Universal Agreements. Before reaching that issue, we note that defendants contend the Universal Agreements evidence a transaction involving interstate commerce. Plaintiffs do not dispute this contention. As a result, our review of arbitrability is governed by federal law under the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1988). *See Lee v. Chica,* 983 F.2d 883, 886 (8th Cir.1993); *Boogher v. Stifel, Nicolaus & Co., Inc.,* 825 S.W.2d 27, 29 (Mo.App.E.D.1992) (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983)).

■ However, the question of which parties are bound by an arbitration agreement concerning interstate commerce "involves the 'general law' of contracts and agency." *Flink v. Carlson,* 856 F.2d 44, 46 n. 2 (8th Cir.1988) (citation omitted). Thus, the courts "apply general state law principles, giving due regard to the federal policy favoring arbitration." *Recold, S.A. DE C.V. v. Monfort of Colorado, Inc.,* 893 F.2d 195, 197 n. 6 (8th Cir.1990); *see also Flink,* 856 F.2d at 46 n. 2. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Boogher,* 825 S.W.2d at 30.

### A. Executive's Agreement

■ As indicated, Bley signed two Universal Agreements, one as president of Executive, the other as president of Tractor–Trailer. The Universal Agreements contained a clause stating, "This agreement shall be effective only when executed by both parties."

However, NCR did not sign the Universal Agreement with Executive. In the absence of NCR's execution, we decline to bind Executive to arbitration pursuant to the Universal Agreement. However, as stated hereafter, Executive is bound by the other Universal Agreement.

We acknowledge the numerous cases which defendants cite where various non-signatories of arbitration agreements were bound under ordinary contract and agency principles. None are factually similar, and they are not persuasive.

### B. Tractor–Trailer's Agreement

The Universal Agreement with Tractor–Trailer was signed by Bley and an NCR representative. Tractor–Trailer acknowl-

edges that it is bound to submit its claim to arbitration.

However, the other plaintiffs contend that they need not submit their claims to arbitration. They point out that they did not sign a binding Universal Agreement and, therefore, do not have to submit their claims to arbitration.

We first note that the pleadings, briefs, and oral argument all disclose that the discussions and contract pertain to only one computer system. For example, plaintiffs' petition refers to it as "the 'Computer System.'"

Next, we observe that the Universal Agreement provides, "Unless the context otherwise requires, the term 'Customer' shall mean the Customer listed above." Plaintiffs contend that because only Tractor–Trailer is listed as customer, no other plaintiff is bound.

However, this argument overlooks the plain language of the arbitration clause. This clause specifically provides, in part:

> *Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement* and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR to Customer, shall be settled by arbitration. (emphasis added).

We first turn to Executive's claims of fraud, negligent misrepresentation, and breach of warranty. They clearly arise out of or relate to Tractor–Trailer's acquisition of the computer system. Further, the record reveals that Executive acted as Tractor–Trailer's agent in acquiring the computer system.

Specifically, plaintiffs' petition states, "Executive is a leasing company that acquires various assets required by Tractor–Trailer, Precision, Midway and Cape." Also, those corporations each "authorized Executive to acquire the Computer System." This one computer system was "to serve the integrated computer needs of all of the plaintiffs."

Federal courts have extended the scope of arbitration clauses, signed by a principal party, to non-signatory agents. *See Pritzker v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1122 (3rd Cir.1993) ("In keeping with the federal policy favoring arbitration, we share the views of the Court of Appeals for the Sixth and Ninth Circuits and will extend the scope of the arbitration clauses to agents of the party who signed the agreements."); *see also Lee,* 983 F.2d at 886–87; *Arnold v. Arnold, Corp.,* 920 F.2d 1269, 1281–82 (6th Cir.1990); *Madden v. Ellspermann,* 813 S.W.2d 51, 53 (Mo.App.W.D.1991).

Therefore, based on the rationale of these cases and the broad language of the arbitration clause, Executive's claims against defendants are also subject to arbitration.

Next, we turn to Precision Rebuilders, Midway Wheel, and Cape Tractor–Trailer. It is unclear what role they played in acquiring the computer system. However, it is evident from their petition that they base their standing to sue on allegations arising solely from the acquisition of the computer system. Thus, their claims against defendants are based on a controversy arising from Tractor–Trailer's acquisition of the computer system from NCR. As a result, these claims fall squarely within the scope of the arbitration agreement.

Also, defendants contend that the non-signatory plaintiffs are bound to arbitration under third-party beneficiary principles. Plaintiffs do not address this contention.

"A third-party beneficiary is one who is not privy to a contract but who is benefited by it and who may maintain a cause of action for its breach." *Volume Services, Inc. v. C.F. Murphy & Assoc.,* 656 S.W.2d 785, 794 (Mo.App.W.D.1983).

Here, although not specifically pled, it appears that Precision Rebuilders, Midway Wheel, and Cape Tractor–Trailer may be suing under a third-party beneficiary theory. These corporations are not listed on the Universal Agreement nor did they sign it.

However, the computer system was intended to benefit them. In their petition, these corporations state that Executive "told the defendants that the Computer System would be required to serve the integrated computer needs of all of the plaintiffs." When defen-

dants allegedly breached the Universal Agreement, the non-signatories brought suit along with Tractor–Trailer.

We recognize that "mere status as a third-party beneficiary ... does not bind the beneficiary to perform the duties imposed by the contract." *Flink*, 856 F.2d at 46. However, "if the third-party beneficiary seeks to enforce the contract, [that party] will be bound by the contract's limitations." *Id.* at 46 n. 3.

Here, Precision Rebuilders, Midway Wheel, and Cape Tractor–Trailer base their standing to sue on claims arising from the acquisition of the computer system which was intended to benefit them. They cannot claim a right to maintain an action based on their status as users of the computer system and, at the same time, disavow this relationship for the purposes of arbitration. Therefore, we find that their claims are also subject to arbitration.

We remand this case to the trial court for entry of an order compelling arbitration as to all claims.

CARL R. GAERTNER and AHRENS, JJ., concur.