Stephen L. BYRD, et al., Respondents,

v.

SPRINT COMMUNICATIONS CO., L.P., Appellant.

No. WD 51725.

Missouri Court of Appeals, Western District.

Aug. 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

Application to Transfer Denied Nov. 19, 1996.

Jerome T. Wolf, Kansas City, for appellant.

Dennis Edward Egan, Kansas City, for respondents.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

This case is an appeal from an order of the trial court denying the application filed by appellant, Sprint Communications Co., to compel arbitration of the dispute brought in the circuit court by the respondents. The respondents are agents of a network marketing firm, consisting of 55 individuals and 3 closely-held corporations, who solicited customers for Sprint's long-distance telephone service.[1] This appeal is authorized by § 435.440.1(1).[2] Whether appellant can compel arbitration of the claims against it is the only point on appeal.

## FACTS

Sprint offers its customers nationwide long-distance service. It contracted with Network 2000, a marketing company, to market its service to new customers. Network 2000 hired independent marketing representatives (IMRs) to solicit the new customers. Sprint did not have a contract with respondents. Pursuant to Sprint's contract with Network 2000, Sprint paid it a percentage of long-distance billings from the customers brought in by Network 2000. Network 2000 would then pay respondents and other IMRs a portion of this sum.

In August of 1992, respondents sued Sprint and Network 2000 for unpaid commissions and related claims. In May of 1995, respondents filed a second amended petition seeking damages for breach of contract, quantum meruit, fraud, breach of fiduciary duty, tortious interference with contracts, tortious interference with business expectancy and conversion. In December of 1995, some of the respondents attempted to certify a class of approximately 81,000 IMRs. Network 2000 does not oppose certification of the class. Sprint does.

In October of 1992, Network 2000 and its principals brought a third-party petition against Sprint seeking indemnification of respondents' claims against them and also for their own allegedly unpaid commissions. Pursuant to the arbitration clause in their contract, Sprint demanded arbitration of these claims. The third-party petition was

---

1. The attorneys for respondents are visiting attorneys admitted *pro hac vice* to practice law for this case in Missouri under Rule 9.03. Pursuant to the rule, a member of the Missouri Bar was designated as associate counsel. The visiting attorneys have managed to violate almost every requirement of Rule 84 concerning respondents' briefs. We recognize that our rules set forth very specific requirements which differ from the appellate practice of other states. However, it is the responsibility of all visiting attorneys, with the assistance of associate counsel, to learn the rules of this jurisdiction before submitting briefs to the courts of this state. Because we are able to decide this case with very little assistance from the Respondents' Brief, their brief has not been stricken.

2. All statutory references are to RSMo 1994 unless otherwise stated.

voluntarily dismissed in December of 1992 to arbitrate their claims.

In April of 1994, Network 2000 filed a cross-claim against Sprint. Sprint moved the circuit court to compel arbitration of Network 2000's cross-claim. The circuit court entered an order sending the cross-claim to arbitration. In November of 1994, Sprint also moved to compel arbitration of respondents' claims. Respondents initially requested the trial court to stay its ruling on this motion, but ultimately opposed the motion to compel. The circuit court denied Sprint's motion to compel arbitration of respondents' claims finding that they were neither third-party beneficiaries of the Sprint/Network 2000 contract, nor agents of Network 2000 or Sprint. Sprint appeals this decision.

## DISCUSSION

■ Sprint's one point relied on asserts the trial court erred in denying its motion to compel arbitration of respondents' claims. The issue we must decide is when a nonsignatory party may be held bound to an arbitration clause in a contract. We must affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court is primarily concerned with reaching a correct result, and need not agree with the reasoning of the trial court to affirm the result. *Farm Bureau Mutual Ins. Co. v. Broadie*, 558 S.W.2d 751, 753 (Mo.App.1977).

The motion to compel arbitration of respondents' claims was based on the arbitration clause contained in the contract between Sprint and Network 2000. This clause reads as follows:

Any disputes between the parties arising out of this Agreement, which are not resolved by the parties within thirty days shall, upon written notice by either party to the other, be resolved by binding arbitration in the metropolitan Kansas City area, in accordance with the provisions of the American Arbitration Association.

Respondents raise several defenses, including that they were not parties to this contract and that their claims are not based on this contract. Respondents' contracts with Network 2000 contained forum-selection clauses stating:

In the event of a dispute between Network 2000 and the IMR, as to their respective rights, duties and obligations under this Contract the parties agree that the exclusive location for jurisdiction and venue for the resolution of such disputes shall be in either the State or Federal court located in Kansas City, Missouri....

■ We will first analyze the effect of the arbitration clause at issue here. The effect of the arbitration clause is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, (FAA), whether suit is brought in state or federal court. *Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 839 (Mo. banc 1985); *Tractor–Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 629 (Mo.App. 1994) (*citing* numerous federal cases). However, general state law principles of contracts and agency govern the question of which parties are bound by an arbitration agreement. *Tractor–Trailer*, 873 S.W.2d at 629. Federal policy dictates that doubts are resolved in favor of arbitrability. *Id.*

■ Appellant raises a number of situations where courts have been willing to hold non-signatories to an arbitration agreement and which appellant claims are present in this case. The first such situation is where the non-signatories are third-party beneficiaries of the contract containing the arbitration clause. This is one of the express grounds on which the trial court denied the motion—holding that respondents' claims were not based on their status as third-party beneficiaries.

■ We agree with the general proposition that one claiming as a third-party beneficiary to a contract containing an arbitration clause is bound by that clause. *Id.* at 631, *citing Flink v. Carlson*, 856 F.2d 44, 46 n. 3 (8th Cir.1988). Though they deny it, we must decide whether respondents are indeed claiming as third-party beneficiaries in this suit. "A third-party beneficiary is one who is

not privy to a contract but who is benefitted by it and who may maintain a cause of action for its breach." *Tractor–Trailer*, 873 S.W.2d at 630; *quoting Volume Servs., Inc. v. C.F. Murphy & Assoc.*, 656 S.W.2d 785, 794 (Mo. App.1983).

Respondents are not privy to the Sprint–Network 2000 contract but were employed because of it and thereby certainly benefitted by it. The question, then, is whether respondents may maintain a cause of action for its breach. "A third-party beneficiary can sue to enforce the contract *if* the contract terms 'clearly express' an intent to benefit either that party or an identifiable class of which the party is a member." *Peters v. Employers Mutual Casualty Co.*, 853 S.W.2d 300, 301 (Mo. banc 1993). "In the absence of such an express declaration, there is a strong presumption that the parties contracted only for themselves and not for the benefit of others." *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo.App. 1995). The Sprint–Network 2000 contract specifically states that it is intended solely for the benefit of the parties thereto, and not for the benefit of any other person. Thus, Sprint expressly excluded itself from liability to third-party beneficiaries. However, this does not answer the question. The question is whether the respondents' petition asserts its claims as a third-party beneficiary, not whether they have standing as a third-party beneficiary.

After reviewing respondents' claims, their theory is one of implied agency. They claim that the conduct of Sprint and Network 2000 led respondents to believe that Network 2000 was merely acting as the agent for Sprint when Network 2000 entered into the IMR contracts with respondents. Thus, they claim, Sprint is obligated to pay the commissions and bonuses to the respondents pursuant to the contracts. Respondents specifically disavow pursuing any rights as a third-party beneficiary. *Cf. Tractor–Trailer*, 873 S.W.2d at 630 ("although not specifically pled, it appears that [they] may be suing under a third-party beneficiary theory"). As both parties appear to admit, third-party beneficiary status brings both obligations and benefits. We should not force respondents to pursue a certain legal theory. If they disavow the benefits, they should not suffer from the obligations. We find that respondents should not be bound to the arbitration clause as third-party beneficiaries. They should be able to pursue whatever legal theory they choose and take whatever legal ramifications come with their chosen theory.

Sprint next asserts that respondents can be forced into arbitration because they share a community of interests with Network 2000 in seeking payment of all Commissions allegedly due from Sprint. Sprint cites to no Missouri law permitting us to bind a non-signatory to a contract based on a community of interests. While they do cite to *Tractor–Trailer*, we find nothing in this case supporting such a proposition. The *Tractor–Trailer* case held the non-signatory bound to the arbitration clause because the non-signatory was suing to enforce the contract containing the arbitration clause and the specific language of the clause encompassed such a suit. 873 S.W.2d at 630. Sprint's only direct support for their theory comes from cases from the Third Circuit Court of Appeals. *See Pritzker v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir.1993); *Isidor Paiewonsky Assoc., Inc. v. Sharp Properties, Inc.*, 998 F.2d 145, 155 (3d Cir. 1993); *Barrowclough v. Kidder Peabody & Co.*, 752 F.2d 923, 938 (3d Cir.1985). However, we are applying Missouri contract law. *Tractor–Trailer*, 873 S.W.2d at 629. We are unpersuaded that we should supplement Missouri contract law with a new theory binding nonsignatories to a contract's terms. Since we find that such a rule does not exist in Missouri, we do not decide whether respondents and Network 2000 actually have a community of interests sufficient to satisfy the rule applied by the Third Circuit.

Finally, Sprint argues that respondents can be bound to the arbitration clause because the respondents are agents of Network 2000. Respondents counter by claiming to be independent contractors and not agents of Network 2000. "Federal courts have extended the scope of arbitration clauses, signed by a principal party, to non-signatory agents." *Id.* at 630, *citing Pritzker*, 7 F.3d at 1122. Our colleagues in the

Eastern District appear to have adopted this rule as well. This court has adopted the rule in the context of allowing non-signatory agents to enforce an arbitration agreement where the agents were co-defendants with the principal who was a signatory to the arbitration agreement. *Madden v. Ellspermann,* 813 S.W.2d 51, 53 (Mo.App.1991). Because this court has permitted agents to take advantage of arbitration agreements which they were not a party to, consistency would dictate we hold non-signatory agents bound by arbitration agreements signed by their principals. We will adopt such a rule.

■ We, then, must determine whether respondents are agents of Network 2000. The requirements to show a principal-agency relationship are clear in Missouri:

> There are three attributes of agency. First, "[a]n agent ... holds a power to alter legal relations between the principal and third persons and between the principal and himself." Second, "[a]n agent is a fiduciary with respect to matters within the scope of his agency." Third, the "principal has the right to control the conduct of the agent with respect to matters entrusted to him." The absence of any one of the three elements of agency defeats a claim that agency exists.

*State ex rel. Bunting v. Koehr,* 865 S.W.2d 351, 353 (Mo. banc 1993) (footnote and citations to Restatement (Second) Agency omitted).

Respondents deny holding the power to alter legal relations between Network 2000 and other persons. It is evident from the IMR contract that every action taken by the IMRs which had any effect on Network 2000 was subject to Network 2000's prior approval before becoming binding on them, including the recruitment of other IMRs. The IMR contract itself states that an IMR is "an Independent Contractor and not an employee, agent, or franchisee of Network 2000." While this clause is not necessarily binding on our determination of whether a principal-agency relationship exists, it is certainly evidence of the parties' intent. Reading this clause along with all of the other clauses in the IMR contract demonstrates to us that Network 2000 expressly denied the IMRs the power to alter legal relations with third persons. Sprint argues that most of the respondents had the responsibility delegated from Network 2000 to train other IMRs. First of all, not all of the respondents had such responsibility delegated to them and we would find it hard to bind them to an agreement they did not sign because of the actions of others over whom they had no control. Secondly, the delegated responsibility to train other IMRs did not delegate the authority to alter legal relations between Network 2000 and third persons. The training was done at the direction of the IMR contract and based on materials provided by Network 2000.

Because we find that the IMRs had no power to alter the legal relations between Network 2000 and third parties, we must find that the IMRs are not agents of Network 2000. *Id.*

### CONCLUSION

■ We find that all of Sprint's legal grounds for holding respondents bound to the arbitration clause signed by Network 2000 fail. "Standing alone, a public policy favoring arbitration is not enough to extend the application of an arbitration clause far beyond its intended scope." *Greenwood v. Sherfield,* 895 S.W.2d 169, 174 (Mo.App.1995) (citation omitted). Sprint and Network 2000 made every effort to ensure that they were the only parties to obtain the benefits of their contract. In this case, there is no legal basis for extending the scope of this arbitration clause to respondents.

We affirm.

All concur.