OPINION
This case is before us on the appeal of Jeri Jankovsky, Susan Gribben, and Robert Morris from a trial court order granting a stay and compelling arbitration of their claims against Edward Jones Co. (Jones). Jankovsky, Gribben, and Morris are the natural children of decedent, John Morris. The other defendant in the action below is Nancy Grana-Morris, who was married to John Morris at the time of his death.
The action against Jones arose in connection with an investment account that John Morris maintained with Jones both before and after his marriage. Morris apparently opened the account around June 19, 1995. Subsequently, Morris married Nancy Grana in 1998. Shortly before their marriage, Grana and Morris signed an ante-nuptial agreement which provided that they would each retain property owned before the marriage. Specific retained property was listed on schedules attached to the agreement. In the agreement, Grana and Morris also released all claims to each other's estate.
At the time the ante-nuptial agreement was signed, Morris' children were designated as primary beneficiaries on the Jones account. The account itself was not specifically mentioned in Morris' schedule of assets, but the investments in the account were listed as separate assets belonging to Morris. Within a few weeks after the marriage, Morris also signed a last will and testament, leaving his entire estate to the children, except for household goods and furnishings bequeathed to Grana to satisfy the terms of the ante-nuptial agreement.
Allegedly, during the last half of 1999 and the beginning of 2000, Morris' health declined, rendering him incompetent to deal with finances. During this time, Morris changed the beneficiary designation on the Jones account and made his wife a 100% primary beneficiary. The children were then listed as contingent beneficiaries. Ultimately, Mr. Morris died on March 7, 2000. Sometime thereafter, the children learned that the Jones assets were not included in the estate and would not be transferred to them. As a result, the children filed suit against Grana and Jones, alleging tortious interference with an expectancy of inheritance.
Jones filed a motion in the trial court, asking that the action be stayed pending arbitration. In support of this request, Jones filed various account documents that contained arbitration clauses. After considering the matter, the trial court granted the motion and ordered the case to be stayed pending arbitration. The children now appeal, raising the following assignments of error:
 I. The Common Pleas Court of Miami County erred to the prejudice of Plaintiffs when it found Plaintiffs are bound by the arbitration provisions of an agreement to which Plaintiffs are not a party and where the terms of the contract are not the subject of dispute.
 II. The trial court erred to the prejudice of the Plaintiffs-Appellants when it failed to provide a hearing or even require a response by Defendants-Appellees to Plaintiffs-Appellant's [sic] motion to strike exhibits.
After considering the facts and applicable law, we find the first assignment of error well-taken. Accordingly, this matter will be reversed and remanded to the trial court for further proceedings.
 I
In ordering arbitration to proceed, the trial court stressed the fact that the children were third-party beneficiaries under a transfer on death (TOD) agreement signed by Morris. The court, therefore, determined that since the children had a right to enforce the contract for their benefit, they should also be bound by the contract's obligations.
The children take issue with this, contending that they were not parties to the agreement and cannot be bound by its terms. They also claim that their cause of action does not arise from the contract, but from the alleged wrongful conduct of Grana and Jones in causing Morris to change beneficiaries.
Jones' first response to these points is that the trial court order is not appealable. In this regard, Jones focuses on language in the TOD agreement which says that the arbitration provision shall be interpreted according to federal law and the Federal Arbitration Act. Jones then notes that Section 3, Title 9, U.S. Code provides for a stay of proceedings where an issue is referable to arbitration. Finally, Jones relies on the fact that under Section 16(b), Title 9, U.S. Code, an appeal may not be taken from an interlocutory order "granting a stay of any action under section 3 of this title."
Although Section 3, Title 9, U.S. Code is not expressly binding on the states, federal substantive law must be applied in cases involving interstate commerce. Cross v. Carnes (1998), 132 Ohio App.3d 157, 164. Further, Morris and Jones contractually agreed that the arbitration provisions would be interpreted according to federal law.
Nonetheless, federal law would not control state court procedure, even though federal substantive law may apply to interpretation of the contract. Specifically, the law of the forum controls matters connected with procedures for contract enforcement, regardless of the substantive law that applies to the contract's validity and interpretation. See,e.g., Guider v. LCI Communications Holdings Co. (1993), 87 Ohio App.3d 412,417. Therefore, Ohio could apply its own procedural law concerning whether a particular order is final and appealable.
Furthermore, Section 3, Title 9, U.S. Code refers to "any suit or proceeding * * * brought in any of the courts of the United States." This is an obvious reference to actions brought in federal court, not to actions brought in a state court. As a result, Ohio law controls our decision on whether the stay order may be appealed.
In this regard, R.C. 2711.02 (C) specifically states that orders granting a stay of trial pending arbitration are final orders. This statute has been interpreted as a legislative grant of express authority to appeal. Sumber Co. Pte Ltd. v. Diversey Corp. (Feb. 28, 1996), Hamilton App. No. C-950360, unreported, 1996 WL 365885, at p. 2. See also, Cross, 132 Ohio App.3d 157, 172, n. 6 (holding that an order granting a stay pending arbitration is a final, appealable order). As a result, the order granting a stay to Jones pending arbitration is a final, appealable order.
Jones' next argument is that the children are bound by the arbitration clause because their lawsuit arises from their status as third-party beneficiaries. Jones also says the children's status should be determined by Missouri law, since the contract provides that Missouri law will govern its interpretation.
The TOD acknowledgment signed by Morris states that the TOD agreement is governed by the laws of Missouri. The arbitration provision within the TOD agreement repeats this statement, and additionally says that the arbitration provision will be interpreted according to federal law and the Federal Arbitration Act. To the extent that both Missouri law and federal law apply, the agreement is arguably ambiguous, particularly if these jurisdictions disagree. However, this is not a troublesome point, since we did not find any relevant conflicts in the applicable law.
In Thomson-CSF, S.A. v. American Arbitration Assn. (C.A.6 1995),64 F.3d 773, the Sixth Circuit Court of Appeals outlined the traditional bases for binding non-signatories to an arbitration clause. These theories arise from common law principles of contract and agency law, and include: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Id. at 776. Incorporation by reference, for example, occurs when a party enters into an agreement incorporating an existing arbitration clause. Id. at 777. Similarly, under "assumption," a party indicates by subsequent conduct that it intends to be bound by an arbitration clause. Id.
In the present case, the only potential category which might apply is estoppel. Under this theory, a party who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate. Id at 778. An indirect benefit is not enough; instead the party must directly benefit from the agreement to be bound. Id. at 779. In this context, the Sixth Circuit noted that several circuits recognize an alternate estoppel theory, where arbitration may be compelled due to:
 the "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract, * * * and [the fact that] the claims were `intimately founded in and intertwined with the underlying contract obligations.'"
Id. at 779 (citations omitted). However, the Sixth Circuit limited this alternate theory to situations where a non-signatory tries to bind a signatory to arbitration, not the reverse, i.e., where a signatory tries to bind a non-signatory. The Sixth Circuit stressed that this distinction is important because "[a]rbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." Id.
Furthermore, even where estoppel has been extended to "intertwined claims," it is generally applied in two circumstances: 1) where a signatory must rely on the terms of the written agreement in asserting claims against a non-signatory; and 2) where the signatory alleges "`substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.'" Grigson v.Creative Artists Agency, L.L.C. (C.A.5 2000), 210 F.3d 524, 527 (citation omitted). For example, in Grigson, two non-signatory defendants were sued by signatories for contractual interference. The contract contained an arbitration clause, and the non-signatories asked the trial court to order arbitration. Id. at 526. After the motion was granted, the signatories appealed. However, based on the above theory of "intertwined claims," the Fifth Circuit held that the signatories would be required to submit to arbitration. In doing so, the court noted that the action by the signatories was a blatant attempt to avoid the arbitration clause.Id. at 530. Again, as the Sixth Circuit stressed, this was not an attempt by a signatory to require a non-signatory to arbitrate.
Like the federal courts, Missouri applies common law principles to decide if parties are bound to arbitrate. For example, inTractor-Trailer Supply Co. v. NCR Corp. (E.D.Mo. 1994), 873 S.W.2d 627, 629, the Eastern District Court of Appeals for Missouri indicated that while review of arbitrarbility is governed by federal law, "the question of which parties are bound by an arbitration agreement concerning interstate commerce `involves the "general law" of contracts and agency.'" The court then applied these general law principles to find that non-signatories were bound to arbitrate. In the particular case, arbitration was required because the contracting party acted as an agent for the non-signatories. Additionally, the non-signatories were third-party beneficiaries under the contract. Id. at 630-31. Similarly, in Byrd v. Sprint Communications Co., L.P. (W.D. 1996), 931 S.W.2d 810, the Western District Court of Appeals for Missouri used both an agency and a third-party beneficiary analysis to decide if non-signatories were required to arbitrate their claims.
Under Missouri law, "`[a] third-party beneficiary is one who is not privy to a contract but who is benefitted by it and who may maintain a cause of action for its breach.'" Tractor-Trailer, 873 S.W.2d at 630 (citation omitted). However, the court also stressed in Tractor-Trailer
that mere status as a beneficiary does not bind a party to perform contractual duties. Instead, the obligation arises where a beneficiary seeks to enforce the contract. Id. at 630. Likewise, in Byrd, the court emphasized that "the question is whether the respondents' petition asserts its claims as a third-party beneficiary, not whether they have standing as a third-party beneficiary." 931 S.W.2d at 814.
Applying these authorities to the present case, we note that the children were benefitted by the TOD agreement. Although the original beneficiary designation form was not given to the trial court, the children claim (and we assume for purposes of review) that they were named as primary beneficiaries on the first form signed by Morris.
Under the TOD agreement, eligible assets are to be transferred to the primary beneficiaries upon the owner's death. Therefore, if Jones failed to comply with this duty at a time when the children were named as primary beneficiaries, the children could have brought a breach of contract action to force payment of the eligible assets. Likewise, the children were named as contingent beneficiaries in the later beneficiary designation, and would have been able to bring a breach of contract action if Jones failed to comply with its duties to contingent beneficiaries. However, neither of these situations occurred.
The arbitration clause in the TOD agreement provides that:
 Any controversy arising out of or relating to any of Owner's accounts or transactions with Edward Jones, its officers, directors, agents and/or employees for Owner, or to this agreement, or the breach thereof * * * shall be settled by arbitration in accordance with the rules then in effect of the Boards of Directors of the New York Stock Exchange, Inc., the American Stock Exchange, Inc., the Municipal Securities Rulemaking Board, or the National Association of Securities Dealers, Inc., as Owner may select. * * *
* * *
 This arbitration provision shall apply to any controversy, claim, or to any issue in any controversy or claim arising from events which occurred prior to, or subsequent to the execution of this Agreement.
Jones points out that this clause is very broad, i.e., it covers "any controversy," even ones arising from events occurring before or after the TOD agreement was executed. As a result, Jones contends that the arbitration requirement encompasses the children's claims.
We agree that the arbitration clause is very broad. However, as was noted by the Missouri courts, the issue is not whether the children have standing to bring an action as third-party beneficiaries. Instead, the issue is whether they are, in fact, asserting their claims on that basis. As we said earlier, the children contend that their action is not based on the contract, but is based on the tort of interference with an expectancy of inheritance or gift.
The elements of this tort are:
 (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.
Firestone v. Galbreath (1993), 67 Ohio St.3d 87, 88. Missouri also recognizes a cause of action under this theory. See, e.g., Graham v.Manche (E.D.Mo. 1998), 974 S.W.2d 580, and Brown v. Kirkham (W.D.Mo. 2000), 23 S.W.3d 880. Although Ohio law would likely apply to this claim, we need not decide this point, since both states allow recovery.
Under established law, parties cannot avoid arbitration by casting contract claims as torts. Grigson, 210 F.3d at 526. By the same token, a tort claim does not become "contractual" simply because an element of proof may relate to a contract. As we said, the children in this case are not suing Jones for breach of contractual duties. To the contrary, Jones apparently transferred the eligible assets in accordance with the contract, i.e., the TOD agreement, and in accordance with the designation on the latest beneficiary form. This is what Jones was contractually obligated to do.
The significant document for purposes of the tort claim is not the TOD agreement, but is the original beneficiary designation form signed by Morris. Furthermore, this latter document is only relevant because it could potentially establish the first element of the tort claim, i.e., that the children had an expectancy of inheritance or gift. Consequently, we agree with the children that their claims are not based on breach of contract and are not subject to the contractual arbitration provisions.
Although arbitration is generally encouraged as a means of settling disputes, non-signatories will be bound by arbitration agreements only in certain situations. Because none of these situations applies in this case, the trial court erred in staying the action and referring the children's claims to arbitration.
Based on the preceding discussion, the first assignment of error is sustained.
 II
In the second assignment of error, the children claim that the trial court erred in failing to provide a hearing on their motion to strike Jones' exhibits, or to even require Jones to respond to the motion. The motion to strike was based on Jones' alleged failure to properly authenticate the exhibits. In view of our disposition of the first assignment of error, this issue is moot.
Based on the preceding discussion, the first assignment of error is sustained, and the second assignment of error is moot. Accordingly, the judgment of the trial court is reversed and this case is remanded for further proceedings.
YOUNG, J., and GLASSER*, J., concur.
* Honorable George M. Glasser, Retired from the Sixth District Court of Appeals, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.