Dianna AZBILL, Appellant,

v.

**UMB SCOUT BROKERAGE SERVICES, INC., and UMB Financial Corporation, Respondents.**

No. WD 62799.

Missouri Court of Appeals, Western District.

March 30, 2004.

Paul K. Hentzen, Leawood, KS, for Appellant.

Patrick J. Whalen and Michael C. Leitch, Kansas City, MO, for Respondents.

Before HOWARD, P.J., and LOWENSTEIN and SMART, JJ.

VICTOR C. HOWARD, Presiding Judge.

Dianna Azbill appeals from the trial court's order granting UMB Scout Brokerage's (UMB) motion to dismiss Azbill's first amended petition. The trial court dismissed Azbill's petition and found that arbitration was not needed, because Azbill would have no standing, in that decedent's estate, not Azbill, was named the primary beneficiary of the individual retirement account (IRA). In her first point, Azbill claims the trial court erred in granting UMB's motion to dismiss, because the beneficiary form with Azbill's name listed was ambiguous on its face. The court, therefore, erred when it failed to consider extrinsic evidence to resolve the ambiguity. Azbill asserts that decedent named her on the beneficiary form and that extrinsic evidence established that decedent intended to make Azbill his primary beneficiary, not his estate. Secondly, Azbill argues the trial court erred in granting UMB's motion to dismiss, because as a matter of law, a court, and not an arbitrator, determines the existence of a contractual relationship by applying state law principles. Consequently, the court erred when it concluded that if the parties entered arbitration, it would be outside the parameters of the court case.

We reverse and remand to the trial court for entry of an order compelling the parties to proceed with arbitration.

## Background

Lloyd Lee Hatfield (decedent) established an IRA account with UMB on or about May 10, 1999. When he established the account, he completed a "Brokerage IRA Application," in which he agreed as follows:

> I agree that all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by arbitration before a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Security Dealers, Inc. as I may designate ... I am aware of the following:

(A) Arbitration is final and binding on the parties.

(B) The parties are waiving their right to seek remedies in court, including the right to jury by trial [sic].

In that same application, decedent designated a beneficiary to receive payment of the IRA account in the event of his death. According to Azbill, on April 4, 2001, decedent amended that designation to name Azbill as his primary beneficiary, making her a third-party beneficiary of the contract.

The IRA Beneficiary Designation Change Form contained the following instruction: "If you wish to designate your estate as your beneficiary, please indicate 'estate' in the primary beneficiary section." Directly below that instruction in the Primary Beneficiary section, decedent wrote "Estate" in the box labeled "Name of Beneficiary/Trust." Below that, in the section labeled "Name of Trustee (If applicable)," decedent wrote Diana Azbill. In the box labeled relationship, he wrote "Friend." In the box labeled "Share %," he wrote "100%." Decedent also included a contingent beneficiary on the second page of the form, again writing "Estate" in the box labeled "Name of Beneficiary." Directly below that, he wrote the name and address of his daughter, Lora Lee Peterson.

Decedent died on June 14, 2002. On August 26, 2002, UMB paid the balance of the IRA account to the personal representative of decedent's estate. Four days later, Azbill made demand on UMB for the proceeds of the account. Azbill filed the present cause of action against UMB on September 25, 2002. Her first amended petition purported to assert claims of breach of contract, negligence, and breach of fiduciary duty.

UMB moved to dismiss Azbill's petition in favor of arbitration. The trial court sustained UMB's motion on February 26, 2003, but withdrew its decision when Azbill filed a first amended petition, which crossed the dismissal in the mail. UMB renewed its motion to dismiss, and the court sustained the renewed motion on April 29, 2003.

The trial court determined that decedent named his estate as his primary beneficiary. The court noted that listing Azbill below this designation was "inconsistent and inexplicable." The court found arbitration unnecessary because it concluded that the estate, not Azbill, was the named beneficiary of the account. The court stated, "This is the only definite and certain intention of the decedent to be found with reasonable assurance of accuracy, and without engaging in speculation as to why ... [Azbill] was listed there." The court ended its order by saying, "If the parties go to arbitration it is outside the parameters of this court case."

This appeal follows.

## I.

In her first point, Azbill claims the trial court erred in granting UMB's motion to dismiss because the beneficiary change form listing her information gave her the right to enforce the payment provisions of the IRA account. Azbill argues that when read as a whole, the change form was ambiguous on its face; therefore, the trial court should have considered extrinsic evidence to resolve the ambiguity. She asserts that the extrinsic evidence demonstrates decedent's intent to name her as the primary beneficiary of his account. Azbill enumerates several sub-points under her first point relied on. We do not need to address these arguments, however, given our holding.

## II.

Azbill argues in her second point that the trial court erred in granting

UMB's motion to dismiss because a court, and not an arbitrator, decides whether a contract has been formed. She claims that the court erroneously concluded that it did not have "jurisdiction to determine whether a contract was formed and that [Azbill] was a third party beneficiary of the account agreement." UMB maintains that the court properly dismissed Azbill's petition, because as a party seeking to enforce the IRA by claiming third-party beneficiary status, Azbill was bound by the contract's terms, including the arbitration provision.

When an arbitration agreement involves interstate commerce, as in this case, the effect of the arbitration clause is governed by the Federal Arbitration Act (FAA). *Byrd v. Sprint Communications Co.*, 931 S.W.2d 810, 813 (Mo.App. W.D. 1996). The FAA favors arbitrability in the face of any doubts concerning the scope of arbitrable issues. *Tractor–Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 629 (Mo.App. E.D.1994). Whether a dispute is covered by an arbitration clause is a matter of law. *Estate of Athon v. Conseco Fin. Servicing Corp.*, 88 S.W.3d 26, 30 (Mo.App. W.D.2002). Our review of the arbitrability of a dispute is *de novo. Id.*

Azbill argues that UMB cannot deny the existence of a contract and, at the same time, attempt to enforce the arbitration clause contained in the IRA account contract. UMB does not deny that it formed a contract with decedent. Rather, UMB asserts that any disputes arising out of the contract must be decided by arbitration, as provided in the Brokerage IRA Application.

Azbill claims she is a third-party beneficiary of the IRA contract. One who makes a claim as a third-party beneficiary

to a contract containing an arbitration clause is bound by that clause. *Byrd*, 931 S.W.2d at 813. Azbill cannot claim a right to maintain an action based on her status as a third-party beneficiary of the IRA agreement and, at the same time, disavow the relationship for the purposes of arbitration. *Tractor–Trailer Supply Co.*, 873 S.W.2d at 631. Whether or not Azbill is the actual beneficiary of the IRA account is irrelevant for deciding the arbitrability of the issue. She cannot base her status to sue on the contract, then attempt to avoid the arbitrability requirement contained in the contract.

Originally, Azbill made three claims: breach of contract, negligence, and breach of fiduciary duty. Clearly, the breach of contract claim is covered by the arbitration provision. When a tort claim arises directly out of a dispute regarding the terms of the parties' contract, it too must be resolved through arbitration. *Estate of Athon*, 88 S.W.3d at 30. The arbitration clause covers all of Azbill's claims, and she must pursue her action through arbitration.

## Conclusion

The trial court properly granted UMB's motion to dismiss Azbill's first amended petition, but did not compel arbitration; we believe it should have.[1] It instead decided the case on the merits. We remand to the trial court for entry of an order compelling the parties to proceed with arbitration.

LOWENSTEIN and SMART, JJ., concur.

---

1. A motion to dismiss may be treated as a motion to compel. *Mueller v. Hopkins &* *Howard, P.C.*, 5 S.W.3d 182, 186 (Mo.App. E.D.1999).