**TRANSIT CASUALTY COMPANY IN RECEIVERSHIP, Respondent,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, who are members of Syndicate No. 553, as Subscribers to Contracts of Reinsurance with Transit Casualty Company and C.J. Warrilow, an Underwriter at Lloyd's of London, Individually, and on behalf of Certain Underwriters at Lloyd's of London who are Members of Syndicate No. 553, Appellants.**

No. WD 53230.

Missouri Court of Appeals,
Western District.

Jan. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1998.

Application to Transfer Denied
April 21, 1998.

Donald C. Otto, Jr., Hendren & Andrae, Jefferson City, Robert A. Knuti, Lord, Bis-sell & Brook, Chicago, Illinois, William E. Quirk, Shughart Thomson & Kilroy, Kansas City, for appellants.

James C. Owen—Paula M. Young Chesterfield, for respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

ELLIS, Judge.

Transit Casualty Company, a Missouri Corporation headquartered in Los Angeles, California, was declared insolvent by the Circuit Court of Cole County, Missouri in 1985 and placed in liquidation pursuant to the provisions of the Missouri Insurers Supervision, Rehabilitation and Liquidation Act, §§ 375.1150–375.1246, RSMo 1984 (the "Liquidation Act"). The trial court appointed a statutory Receiver of Transit in that proceeding. Prior to its insolvency, Transit entered into a series of reinsurance agreements with certain underwriters at Lloyd's of London, who were members of Lloyd's Syndicate 553. At the time these contracts were created, C.J. Warrilow was the Syndicate member with the principal responsibility for underwriting risks for Syndicate 553. These underwriters are hereinafter referred to as the Reinsurers.

In December, 1995, Transit [1] commenced an action against the Reinsurers in the court below charging that they had failed to make payments due to Transit under these reinsurance agreements. The Reinsurers subsequently filed a motion in the trial court seeking an order of the court compelling arbitration of the Receiver's claims. The trial court denied the motion and the Reinsurers bring this appeal.

Prior to its insolvency, Transit engaged in worldwide insurance and reinsurance business for many years. It did business in all 50 states and ceded business to some 900 reinsurers located in 30 or so foreign nations. Although the reinsurance contracts at issue in the instant appeal covered the years between 1978 and 1984, the Reinsurers' obli-

---

1. Transit Casualty Company in Receivership, the insolvent company, is the party to this action, not the court appointed Receiver.

gation thereunder followed the liabilities occurring under Transit's insurance policies. These liabilities include "long-tail" claims, meaning claims for injuries and damages which occurred during the policy years 1978 through 1984, but which are still ongoing. Asbestos exposure, breast implants, and environmental or toxic tort claims are among the types of long-tail claims for which liabilities still exist. Transit brought the instant action for its present "paid" claims, those on which Transit claims a present payment obligation, but because the claims continue to accrue, additional claims by Transit against Lloyd's will continue for many years until Transit's obligation under its policies are all finally concluded.

Transit filed the instant action in December, 1995, and styled it a petition and motion for order to show cause. The petition was amended in February, 1996, and asserted three counts. Each of the three counts was predicated on obligations allegedly owed Transit under the reinsurance agreements. The first count claimed that the Reinsurers were withholding monies due under the agreements in violation of statute and orders of court. The second count claimed damages for Reinsurers' breach of the reinsurance agreements in the amounts allegedly due under them. The third count repeated the allegation of the first two counts as a claim for amounts due and unpaid on an open and current account. The Reinsurers moved to dismiss the amended petition on the ground that the parties' agreements required the dispute to be arbitrated. The Reinsurers then removed the case to the United States District Court for the Western District of Missouri, where they sought an order compelling arbitration under Federal Arbitration Statutes, 9 U.S.C. §§ 1–16 and §§ 201–208, as well as Missouri's Uniform Arbitration Act, §§ 435.350–435.470, RSMo (1994). On June 11, 1996, the Federal District Court granted a motion by the Receiver to remand the action to the Circuit Court of Cole County. The Federal Court listed two reasons for its decision. First, the court construed "the service of suit" clause in the reinsurance agreements as a waiver of the Reinsurers' right of removal. Secondly, the court found that the Reinsurers' rights under the Federal

Arbitration Laws were superseded by a provision in the Missouri Uniform Arbitration Act that excluded arbitration agreements in "contracts of insurance" from the enforcement provisions of the Act. The Reinsurers appealed the District Court's decision to the 8th Circuit Court of Appeals. The Federal appeal was pending at the time the instant appeal was orally argued and submitted to this court. However, we take judicial notice of the fact that the United States Court of Appeals for the 8th Circuit handed down its opinion in No. 96–2532 on July 10, 1997, and dismissed the appeal pursuant to 28 U.S.C. § 1447(d) for lack of jurisdiction. Thus, the District Court's remand to the Circuit Court is a final disposition.

Meanwhile, the Circuit Court of Cole County allowed Transit to file a second amended petition and motion for order to show cause against Reinsurers based on the same reinsurance agreements. It is that petition which is the subject of this appeal. The second amended petition alleges, in separate counts, that the Reinsurers owe Transit nearly a million dollars under the reinsurance agreements and the liquidation order; that the Reinsurers breached the reinsurance agreements to Transit's damage; that the Receiver has made demand on the claims against the Reinsurers on an open account over periods covered by the reinsurance agreements and the Reinsurers have refused to pay; that the Reinsurers have breached a contractual duty of good faith and fair dealings; that the Reinsurers are guilty of "vexatious delay" in making payment under the agreements; that Transit is entitled to statutory punitive damages for wrongful refusal to pay amounts due under the agreements; that Transit is entitled to specific performance of a contract provision allegedly requiring the posting of a letter of credit for over 5.9 million dollars; and that Transit is entitled to specific performance of a contract provision to compel a final settlement of all future liabilities under the agreements. The petition also characterized the Reinsurers' alleged failure to discharge their obligations under the reinsurance agreements as a refusal to surrender assets belonging to Transit in violation of an order entered by the trial

court at the outset of the Transit liquidation proceeding and sought to have the Reinsurers held in contempt of court for doing so.

Each of the reinsurance agreements contained an arbitration clause. The 1978 agreement is typical, and Art. XXII of that agreement provides, in pertinent part:

> All disputes or differences arising out of this disagreement shall be submitted to the decision of two arbitrators, one to be chosen by each party, and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the arbitrators.

The agreements also contain a "service of suit" clause, pursuant to which the Reinsurers agree to submit to the jurisdiction of the courts of any state in which Transit is admitted to do business. Art. XVII of the 1978 agreement, in relevant part, provides:

> In the event of the failure of the reinsurer to pay any amount claimed to be due hereunder, the reinsurer will, at the request of the reinsured, submit to the jurisdiction of any competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in a court with the law and practice of such court.

In its order denying the motion to compel arbitration, the court found that the clear and specific language of the "service of suit" clauses of the reinsurance agreements control over the arbitration provisions of those agreements and permitted Transit to litigate the claim of a failure to pay in court. The court likewise found that § 375.1188 controls over any other state or Federal law and prohibits the motion to compel arbitration.

■ We first take up our jurisdiction to decide the appeal. Transit filed a motion to dismiss the appeal, asserting the trial court's order did not dispose of all parties before the court because C.J. Warrilow did not join in the motion to compel arbitration. This court denied Transit's motion by order entered October 7, 1996. However, Transit renews its motion to dismiss the appeal in its brief

and at oral argument. Transit relies on *Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.,* 904 S.W.2d 37 (Mo.App. S.D. 1995). In *Abrams,* the plaintiff brought suit against the named defendants as well as one Peter Brown. Subsequently, plaintiff filed a motion to compel arbitration as to the claims against Four Seasons Lakesites/Chase Resorts, Inc., but did not make demand for or move to compel arbitration with respect to the claims against Peter Brown. The trial court denied the motion to compel arbitration, and the plaintiff appealed. The Southern District of this court dismissed the appeal, finding that although orders denying an application to compel arbitration made pursuant to § 435.355 are appealable pursuant to § 435.440.1(1),[2] they are only appealable "in the manner and to the same extent as [appeals] from orders or judgments in a civil case." *Id.* at 39 (quoting § 435.440(2)). Thus, since the order did not apply to Peter Brown because the motion to compel arbitration did not include the claims against him, and further because the order did not include an express determination that there was no just reason for delay as required by Rule 74.01(b), the court concluded that the order was not an appealable order and therefore dismissed the appeal. As indicated, Transit makes the same assertion, contending that (1) C.J. Warrilow was not a party to the motion to compel arbitration, and therefore, all parties were not disposed of, and (2) the order did not include the recitation required by Rule 74.01(b). Therefore, Transit reasons that under *Abrams* the appeal should be dismissed.

The answer to Transit's claim is first, and quite simply, that C.J. Warrilow was in fact a party to the motion to compel arbitration, and such was made clear in the motion, notwithstanding the fact that he was not expressly named in the caption thereof. Consequently, the order appealed from did dispose of all parties. Moreover, this court held in *Madden v. Ellspermann,* 813 S.W.2d 51 (Mo.App. W.D.1991), that § 435.440 takes precedence over general statutes relating to

---

**2.** Section 435.440.1 provides, in pertinent part:
An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 435.355;

appeals, in particular § 512.020 which requires a final judgment before an appeal is allowed, because it deals specifically with the question of an appeal from an order denying an application to compel arbitration. "In that instance the special statute allowing an appeal from an order denying arbitration will prevail and the order denying arbitration in this case is appealable." *Id.* at 53. Thereafter, the Eastern District of this court reached a similar conclusion in *Young v. Prudential Securities, Inc.*, 891 S.W.2d 842 (Mo.App. E.D.1995). In that case, the court found that the conflict that exists between § 435.440 and § 512.020, which we identified in *Madden,* likewise exists between § 435.440 and Rule 74.01(b), which requires an express finding that "there is no just reason for delay" for a judgment disposing of fewer than all claims or parties to be appealable. The court found that "the reasoning applied in *Madden* is equally applicable." *Young,* 891 S.W.2d at 844. The court therefore concluded that the order denying the application to compel arbitration in that case was likewise appealable. For the same reason, the order denying the application to compel arbitration in the instant case is appealable. To the extent, if at all, that *Abrams* is inconsistent with *Madden* and *Young,* we choose not to follow it.

The Reinsurers bring four points on appeal. In Point I, they assert the trial court erred in denying their motion to compel arbitration on the ground that the "service of suit" clauses expressed an intent on the part of the Reinsurers to waive their rights under the arbitration clauses of the agreements. In Point II, the Reinsurers contend that the trial court erred in finding that § 375.1188 takes precedence over other state or federal laws such as to preclude arbitration. In Point III, the Reinsurers argue that the trial court erred in finding that federal arbitration policy is inconsistent with the insurance regulatory laws of Missouri, and in Point IV, they contend the trial court erred in denying their motion to compel arbitration on the ground that the claims of the Receiver they seek to arbitrate involved matters *sui generis* to the court. Transit responds to the Reinsurers' points on appeal by generally asserting: (1) the plain language of the contract does not require arbitration of the dispute involving the Reinsurers' "failure to pay;" (2) Missouri's insurance insolvency law controls and it specifically bars any person from compelling arbitration against an insolvent insurer; and (3) the injunction order is *sui generis* and cannot be avoided by a contractual arbitration clause.

In the Reinsurers' Point I, they contend the trial court found that they waived their arbitration rights by placing a strained reading on the reinsurance agreements that flies in the face of established rules of contract interpretation. They observe that waiver of arbitration rights is not to be lightly inferred by the courts and resort to principals of contract construction in an effort to demonstrate the error of the trial court's decision.

All of the reinsurance agreements in effect from 1978 to 1984 contain the two provisions that are at issue in this appeal:

Article XVII–Service of Suit Clause

**In the event of the failure of the reinsurer to pay an amount claimed to be due hereunder, the reinsurer will, at the request of the reinsured, submit to the jurisdiction of any court of competent jurisdiction within the United States** and will comply with all requirements necessary to give such court jurisdiction and **all matters arising hereunder shall be determined in accord with the law and practice of such court.**

\* \* \*

[I]n any suit instituted against the reinsurer under this agreement the **Reinsurer will abide by the final decision of such court or any reviewing court.**

Article XXII–Arbitration Clause

**All disputes or differences arising out of this agreement shall be submitted to the decision of two Arbitrators ...** and in the event of the Arbitrators failure to agree, to the decision of the Umpire to be chosen by the Arbitrators.

██ It is settled law in Missouri that insurance and reinsurance is a matter of contract, and is governed by the rules applicable to contracts. *Hartford Accident & In-*

*dem. Co. v. Farmington Auction, Inc.,* 356 S.W.2d 512, 518–19 (Mo.App. E.D.1962); *O'Hare v. Pursell,* 329 S.W.2d 614 (Mo.1959). Thus, the cardinal rule of interpretation of a reinsurance treaty [3] is to ascertain the intention of the parties as expressed in the whole of the contract. *U.S. Fidelity & Guaranty v. Drazic,* 877 S.W.2d 140, 142 (Mo.App. E.D. 1994). When the language of the treaty is clear and unambiguous, there can be no construction by the court because there is nothing to construe. *Id.; O'Hare,* 329 S.W.2d at 621. It is only where a reinsurance treaty contains an ambiguity such that its language is reasonably susceptible to different meanings that a court must construe the agreement. *Haggard Hauling v. Stonewall Ins.,* 852 S.W.2d 396, 399 (Mo.App. W.D.1993). In construing a reinsurance treaty, the words used therein will be given their ordinary meaning, unless it plainly appears that a technical meaning was intended. *Farmland Indus., Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997). The common sense, ordinary meaning of a term is the meaning that the average layperson would reasonably understand. *Id.* A conflict between two provisions in a reinsurance agreement makes the agreement susceptible of two interpretations and therefore ambiguous. *Sadler v. Board of Educ. of Cabool Sch. Dist., R–4,* 851 S.W.2d 707, 712 (Mo.App. S.D.1993). Any ambiguities in a reinsurance agreement will be construed against the party who drafted the contract. *Graue v. Missouri Property Ins. Placement Facility,* 847 S.W.2d 779, 785 (Mo. banc 1993). The terms of the contract are read as a whole to arrive at the intention of the parties and each term and clause is construed to avoid an effect which renders other terms and provisions meaningless. *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo.App. W.D. 1995). A specific provision within a reinsurance agreement will prevail over more general provisions if there is an ambiguity or inconsistency between them. *H.B. Oppenheimer & Co. v. Prudential Ins. Co. of Am.,* 876 S.W.2d 629, 632 (Mo.App. W.D.1994). And finally, a construction attributing a rea-

sonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is preferred to one which leaves some of the provisions without function or sense. *Ringstreet Northcrest, Inc.,* 890 S.W.2d at 718.

■ Turning now to the reinsurance contracts at issue in this appeal, we first observe that all parties concede that the Reinsurers drafted the language of the service of suit clause, Art. XVII. There is also no question that the service of suit clause is very specific to the single issue of **"failure to pay"** any amount **"claimed"** to be due under the contract. On the other hand, the arbitration clause of Art. XXII is broad and general and refers to all disputes or differences arising out of the entire contract. It is likewise conceded that the reinsurance agreements cover "long-tail" claims, and the periods of coverage already span nearly twenty years and are anticipated to cover perhaps another ten years. Thus, the parties, when the treaties were entered into, could anticipate a great number of differences arising under the numerous clauses of the very lengthy treaty documents, most of which would not pertain to a "failure to pay."

In evaluating Art. XVII, the service of suit clause, the language is plain and clear. The clause spells out that, in the event of a failure of the reinsurer to pay an amount claimed by Transit to be due under the reinsurance agreement, the reinsurer will, at Transit's request, submit to the jurisdiction of any court of competent jurisdiction within the United States; that all matters shall be determined in accord with the law and practice of such court; and that the reinsurer will abide by the final decision of such court. The clause even contemplates an appeal when it provides that the reinsurer will abide by the final decision "of any reviewing court."

The language of the service of suit clause cannot, as the Reinsurers here assert, pertain only to the enforcement of an arbitration award. The plain language of the clause does not mention or otherwise refer to the

**3.** "Reinsurance agreement," "reinsurance contract," and "reinsurance treaty" are used synon-

ymously throughout this opinion.

word "arbitration," nor does it refer to Art. XXII governing arbitration. Moreover, the Reinsurers' interpretation would render the words "amounts claimed to be due" meaningless; it would change the contract to read "amounts awarded by an arbitration panel." Such is not what the service of suit clause specifies. Rather, the clause clearly refers to a unilateral claim by Transit, not an arbitration award resolving disputed claims of both parties.

▆ Having concluded that the plain language of the service of suit clause permits Transit to litigate a failure to pay any amount "claimed" to be due under the agreements in any court of competent jurisdiction, we turn to Art. XXII, the arbitration clause, to determine whether an inconsistency exists between the two clauses. As noted earlier, the arbitration clause is broad and general, referring to "all disputes or differences arising out of this agreement." The general language of the arbitration clause, "all disputes or differences," clearly encompasses a dispute or difference over a claimed failure to pay. Therefore, there is a classic conflict and inconsistency between the service of suit clause and the arbitration clause in the reinsurance agreement. "These two requirements are inconsistent. Being reasonably susceptible of two interpretations, the contract is ambiguous." *Sadler*, 851 S.W.2d at 712. Since the reinsurance agreements are ambiguous, we must construe them by application of the rules of construction set forth, *supra*, and, as will be seen, application of those rules compels affirmance of the trial court's decision.

▆ We first look to the nature of the two inconsistent clauses and find, as we have previously observed, that Art. XVII, the service of suit clause, is the more specific clause, dealing with the single issue of a failure to pay amounts claimed to be due under the reinsurance contracts. The arbitration clause, Art. XXII, is broad and general, and refers to all disputes or differences arising out of the reinsurance agreements. As noted earlier, when one contract clause is general and inclusive and another is more limited and specific, the more specific clause acts to modify and *"pro tanto"* nullify the more general

clause. *Surface v. Ranger Ins. Co.*, 526 S.W.2d 44, 48 (Mo.App. S.D.1975). Accordingly, this rule compels a construction of the agreements such that disputes relating to Transit's claims of the Reinsurers' failure to pay will be governed by the more specific service of suit clause in Art. XVII, rather than the more general and broad provisions of the arbitration clause in Art. XXII.

The next rule of construction requires that the ambiguity must be read against the draftsman of the provisions in question. As noted previously, it is conceded that the Reinsurers drafted the service of suit clause. Thus, we construe the provisions contrary to the Reinsurers' asserted interpretation on this appeal and consistent with the outcome contended for by Transit. The Reinsurers could have written the clause in these reinsurance agreements to expressly state that Art. XVII, the service of suit clause, only applies to suits to enforce arbitration awards, or otherwise, as it here argues. As observed in the Memorandum Order and Decision in *Thiokol Corp. v. Certain Underwriters at Lloyd's of London*, No. 1:96–CV–028B (D.C.Utah 1997), *appeal dismissed per stipulation*, (10th Cir., October 14, 1997), "[i]f Lloyd's—one of the largest and most experienced insurance underwriters in history—wanted to make its own boilerplate service of suit clause only an 'aid to arbitration,' it could have employed simple English words to say so." *Id.* at Slip Op. 10, n. 3. The Reinsurers did not do so. This is the reason for the rule that courts construe ambiguities in contracts against those who draft them. *Schroeder v. Horack*, 592 S.W.2d 742, 751 (Mo. banc 1979) (Rendlen, J., dissenting). The Reinsurers are in no position to complain at this point about the fact that they failed to draft the language as they would now like for this court to interpret it.

Our rules of construction also require that we construe reinsurance agreements to avoid an interpretation which would render a clause or a term meaningless. The Reinsurers' argument, referred to earlier, that Art. XVII only relates to enforcement of arbitration awards would render the word "claimed" in that clause meaningless. Such being the case, the Reinsurers' argument that a dis-

pute involving a "failure to pay" must be arbitrated makes the entire first paragraph of the service of suit clause void and meaningless because the provision would then only apply to amounts **actually** due, which would, of necessity under the Reinsurers' argument, have been determined to be due by an arbitration panel.

We have previously observed that the language of the service of suit clause is plain and clear. The plain language, and clear meaning, of the service of suit clause gives meaning to the word "claimed."

> In the event of the **failure** of the reinsurer to pay an amount **claimed** to be due hereunder, **the reinsurer will, at the request of [Transit], submit to the jurisdiction of any court of competent jurisdiction within the United States**....

The intention of the parties to permit Transit, when it claims the Reinsurers have failed to pay an amount due under the reinsurance treaties, to litigate that issue is clearly enunciated in the clause and all words are given their plain and ordinary meaning. The Reinsurers' strained construction would render meaningless much of the language in the service of suit clause and distort the otherwise clear intent of the parties. We reject such a construction.

▆ Finally, interpreting the service of suit clause to permit Transit to litigate its claims that the Reinsurers have failed to pay amounts due harmonizes seemingly conflicting provisions. Arbitration is not barred. To the contrary, all disputes or differences arising out of the reinsurance treaties, other than those involving claims by Transit of failure to pay on the Reinsurers' part, are subject to arbitration. Indeed, claims by Transit of the Reinsurers' failure to pay may be submitted to arbitration if Transit so elects. Thus, our construction harmonizes the service of suit clause and the arbitration clause because arbitration remains a viable option in all circumstances, but is only optional when the dispute involves a claimed failure of payment by Transit.

▆ In summary, we find a patent ambiguity in the conflict between the service of suit clause, Art. XVII, and the arbitration clause, Art. XXII, in the reinsurance agreements. Applying our rules of contract construction, we conclude that the intention of the parties was to give Transit two options: (1) proceed to arbitration on "all disputes or differences arising out of the [reinsurance] agreement;" or (2) require the Reinsurers to submit to litigation in the United States in a court of competent jurisdiction selected by Transit "in the event of the failure of the reinsurer[s] to pay an amount claimed to be due" under the reinsurance agreement.

While this is a case of first impression in Missouri, and there is sparse authority elsewhere, there is, nonetheless, a body of case law construing Lloyd's service of suit clauses in a related context which is consistent with our interpretation. In those cases, the courts have considered whether a service of suit clause, similar or identical to those at issue here, precludes a reinsurer's right to remove an action initiated in state court to Federal court. A large majority of those cases hold that once the reinsured has chosen a state court forum, the reinsurer cannot force a forum change by removing the case to Federal court. These cases are persuasive because they reject the same arguments made by the Reinsurers in the case at bar.

In *General Phoenix Corp. v. Malyon*, 88 F.Supp. 502 (S.D.N.Y.1949), General Phoenix obtained policies of insurance from Lloyd's indemnifying it against losses that might arise out of its finance factoring business. Thereafter, General Phoenix claimed that Lloyd's had failed to pay certain amounts due under the policies and brought an action in New York State Supreme Court. Lloyd's removed the case to Federal Court, and General Phoenix moved to remand based on the service of suit clause in the insurance contracts, the language of which is identical to those contained in the reinsurance agreements at issue in this appeal. Lloyd's asserted, as the Reinsurers do here, that the service of suit clause was merely an agreement to submit to personal jurisdiction. The court rejected this argument finding it "somewhat of a strain to find such intention, whereas the simple verbiage of the clause supports the plaintiff's view." *Id.* at 503. The court then went on to state:

The defendant agreed to " ... submit to the jurisdiction of any Court of competent jurisdiction within the United States...." The Supreme Court of the State of New York is such a Court ....

The defendant agreed that "... all matters arising ... shall be determined in accordance with the law and practice of such Court"; and "such court" could mean only the Supreme Court, to which defendant submitted. One may not determine matters in accordance with the law and practice of the Supreme Court in this Court. Finally, the defendant agreed to " ... abide by the final decision of such Court ..." Removing the suit from the Supreme Court to here is not such abidance.

[T]he clause is legal and ... the defendant is bound by it.

*Id.* Thus, as early as 1949, Lloyd's of London, of which the Reinsurers in the instant appeal are a syndicate, was using the identical service of suit clause that appears in the reinsurance contracts here under consideration. And, as early as 1949, Lloyd's was told by the *General Phoenix* court that the service of suit clause could not be read as "merely an agreement to submit to personal jurisdiction," but rather meant that the insured could unilaterally select a state court forum and that Lloyd's could not remove the case to the Federal system. *Id.*

Numerous other cases have followed. *Perini Corp. v. Orion Ins. Co.*, 331 F.Supp. 453 (E.D.Cal.1971), involved identical circumstances to those in *General Phoenix*, and an almost identically worded service of suit clause drafted by Lloyd's. The insurer was trying to remove an action initiated in state court to Federal court, and the insured sought to prevent it based on the service of suit clause. The *Perini Corp.* court first observed that numerous courts considering the issue had already determined that the clause's "submission" to a state forum precluded removal. The court then stated:

The author of this policy, Lloyd's of London, has known at least as early as the *General Phoenix* decision in 1949 that the clause prevents removal of state-initiated actions. Confronted with repeated decisions following *General Phoenix*, Lloyd's

and its associated underwriters can hardly claim that this interpretation comes as a surprise. If the courts have misconstrued the clause, Lloyd's has had ample opportunity to invoke the ultimate remedy, the drafter's pen. Until the clause is changed, therefore, the parties are entitled to expect that the clause now means what it has always meant — that "submission" to a state tribunal precludes removal to a federal court.

*Id.* at 455.

More recently, in *Archdiocese of Milwaukee v. Underwriters at Lloyd's*, 955 F.Supp. 1066 (E.D.Wis.1997), the same issue was presented. The plaintiffs brought an action in state court, Lloyd's removed it to Federal court, and the plaintiffs moved to remand. The insurance agreements contained clauses almost identical to the service of suit clauses in the instant reinsurance agreements. And, again, the court reached the same conclusion virtually every other court addressing the issue has reached: the contractual provisions preclude removal and compel remand to the state court. *Id.* at 1071. The court found that the policy provisions clearly demonstrated that Lloyd's agreed to litigate claims of failure to pay amounts due under the policy "in any court of competent jurisdiction selected by the plaintiff-insureds." *Id.* In reaching its decision, the court relied on the many cases that had reached the same conclusion, and distinguished the few cases cited by Lloyd's in support of its position, for the same reasons we distinguish them, *infra.*

The great weight of authority supports the position taken in *General Phoenix, Perini Corp.*, and *Archdiocese of Milwaukee. See Travelers Ins. Co. v. Keeling*, 1993 WL 18909 (S.D.N.Y.1993), *affirmed in pertinent part*, 996 F.2d 1485 (2d Cir.1993); *Welborn v. Classic Syndicate, Inc.*, 807 F.Supp. 388 (W.D.N.C.1992); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir.), *cert. denied*, 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13 (5th Cir.), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991); *Cessna Aircraft Co. v. Fidelity & Casualty Co. of New York*, 616 F.Supp. 671 (D.N.J. 1985); *Capital Bank & Trust Co. v. Associat-*

ed Int'l Ins. Co., 576 F.Supp. 1522 (M.D.La. 1984); Himes v. Admiral Ins. Co., 575 F.Supp. 312 (E.D.Ky.1983); Lavan Petroleum Co. v. Underwriters at Lloyds, 334 F.Supp. 1069 (S.D.N.Y.1971); Oil Well Serv. Co. v. Underwriters at Lloyd's of London, 302 F.Supp. 384 (C.D.Cal.1969); Euzzino v. London & Edinburgh Ins. Co., 228 F.Supp. 431 (N.D.Ill.1964). This same authority is consistent with and bolsters the conclusion we reach herein.

The Reinsurers cite several cases in support of their assertion that the service of suit clause is nothing more than a service of process clause or a personal jurisdiction clause, primarily: Brooke Group Ltd. v. JCH. Synidcate, 87 N.Y.S.2d 530, 640 N.Y.S.2d 479, 663 N.E.2d 635 (1996); Whirlpool Corp. v. Certain Underwriters at Lloyd's of London, 278 Ill.App.3d 175, 214 Ill.Dec. 901, 662 N.E.2d 467 (1996); In re Delta Am. Re Ins. Co., 900 F.2d 890 (6 th Cir.), cert. denied, 498 U.S. 890, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990); and McDermott Int'l Inc. v. Lloyd's Underwriters of London, 944 F.2d 1199 (5 th Cir.1991). Brooke Group, 87 N.Y.S.2d 530, 640 N.Y.S.2d 479, 663 N.E.2d 635, is illustrative of the cases relied on by the Reinsurers. In that case, defendant J.C.H. Syndicate was the lead underwriter on a Lloyd's insurance policy issued to plaintiff Brooke Group Ltd. Brooke Group submitted a claim on the policy, and Lloyd's refused to pay it. Plaintiff then brought an action in New York state court, and Lloyd's moved to dismiss on forum non conveniens grounds. The trial court granted the motion, finding that the suit was between two foreign corporations, involved insurance issued in England, covered property in Russia, and that there was an arbitration forum available in England to resolve the dispute. On appeal, the New York Court of Appeals affirmed. Since the case was argued and decided on forum non conveniens grounds, the conflict between the service of suit clause and the arbitration clause of the insurance policy was somewhat ancillary. Id. at 638, 640 N.Y.S.2d at 482. Nevertheless, the plaintiff did assert that the service of suit clause "constituted a mandatory forum selection clause providing an alternative to arbitration and precluding dismissal on forum non conveniens grounds." Id. at 637, 640 N.Y.S.2d at 481. The defendants contended that they merely agreed to submit to the jurisdiction of a court within the United States, but did not agree that jurisdiction would be limited to a particular venue. The New York court disregarded the conflict between the service of suit and arbitration clauses and concluded that the former provision did not manifest an intent to limit jurisdiction to a particular forum and, as such, was permissive and did not require the defendants to litigate the dispute in New York. Id. at 638, 640 N.Y.S.2d at 482. In reaching its conclusion, the court reasoned that such conclusion was necessary because there was no mandatory language binding the parties to a particular forum. Id. In that regard, the Brooke Group case is distinguishable from the case at bar because the service of suit clauses at issue in this appeal contain mandatory language requiring the parties to abide by the final decision of the court chosen by Transit or by the appropriate appellate court. Moreover, we are unpersuaded by the Brooke Group court's reasoning. The effect of the Brooke Group decision was to rewrite the contract entered into by the parties. The court there speaks of interpreting the contract consistent with its plain meaning, but then proceeds to, in effect, add a new clause to the agreement that renders the service of suit provision a mere "aid" to arbitration.

In re Delta America Re Insurance Company, 900 F.2d 890, is equally unavailing to the Reinsurers. In Delta, a commercial bank branch of foreign sovereign removed a state court action to Federal court pursuant to 28 U.S.C. § 1441(d), a part of the Foreign Sovereign Immunities Act, (FSIA), which gives foreign sovereigns the right to remove actions brought against them in state court. In holding that removal was permitted, the court relied heavily on the FSIA granting the right of removal to foreign sovereigns, thereby allowing them to avoid "any local bias or prejudices possibly inherent in state court proceedings and also to avoid trial by jury." Id. at 893. Moreover, the Delta court had no evidence as to who drafted the contract clause and, therefore, could not construe it against the drafter. For these reasons, Del-

*ta* is not persuasive here, where the Reinsurers are conceded to be the drafters and there are no considerations involving the FSIA.

*Whirlpool Corp.*, 278 Ill.App.3d 175, 214 Ill.Dec. 901, 662 N.E.2d 467, was a removal case involving the issue of *forum non conveniens*. The court acknowledged a split of opinion on the interpretation of service of suit clauses, but essentially chose to ignore the vast majority of decisions which held that such provision precludes removal. *Id.* at 471, 214 Ill.Dec. at 905. And finally, in *McDermott*, 944 F.2d 1199, the court found an ambiguity between the service of suit clause and the arbitration clause, as we do in the instant appeal. The court expressly recognized "two alternate readings of the policy's service-of-suit and arbitration clauses." *Id.* at 1204. However, the court refused to construe the ambiguity against the drafter, which was conceded to be Lloyd's. Obviously, this approach is contrary to Missouri's (and most other jurisdictions') rules of contract construction. As a result, the court went on to "harmonize" the conflicting provisions by, in effect, construing the service of suit clause as a mere submission to jurisdiction in aid of arbitration. In doing so, the court effectively re-wrote the parties' contract.

As noted earlier, we consider all of the cases cited by the Reinsurers to be readily distinguishable or unpersuasive, as have other courts.[4] We are unwilling to abandon our time honored rules of contract construction,

and we decline the invitation to re-write the parties' contracts. Moreover, the two most compelling cases on the issues involved in the pending appeal are those which sought removal of the instant action to Federal court, and its companion case. In the first, *Transit Casualty Company in Receivership v. Certain Underwriters at Lloyd's of London Who are Members of Syndicate No. 553*, No. 96–4173–CV–C–2, 1996 WL 938126 (W.D. Mo. June 10, 1996), *appeal dismissed by opinion*, 119 F.3d 619 (8th Cir.1997), the United States District Court for the Western District of Missouri expressly found that the service of suit clauses found in the reinsurance agreements at issue in this appeal precluded removal from state court and compelled remand. The 8th Circuit found that the District Court's order was not appealable and dismissed the appeal pursuant to 28 U.S.C. § 1447(d) for lack of jurisdiction. The second case is the companion to the first, *Transit Casualty Company in Receivership v. Certain Underwriters at Lloyd's of London Who are Members of Syndicate Nos. 109, 227, 246, 257, 263, 278, 279, 498, 553, 618, 650, 939, 947, 948, & 989*, No. 96–4386–CV–C–2, 1997 WL 854496 (W.D.Mo. Sept. 29, 1997). We take judicial notice of this decision, which was rendered after submission of this appeal. In the latter case, the same issues as were raised in the first case were presented. The Reinsurers removed, and the Federal court remanded, again because the service of suit clauses precluded removal. We are satisfied that our decision is sup-

---

**4.** In the most recent case to address the issue, a Memorandum Decision and Order in *Thiokol Corp. v. Certain Underwriters at Lloyd's of London*, No. 1:96–CV–028B (D.C.Utah 1997), *appeal dismissed per stipulation* (10th Cir. October 14, 1997), the court was confronted with a service of suit clause and an arbitration clause virtually identical to those before us. The case arose in the typical manner. Thiokol submitted a claim for amounts due, and Lloyd's refused to pay. Thiokol then brought suit in United States District Court. Lloyd's responded with a motion to stay the action in favor of arbitration. Lloyd's argued that the service of suit clause merely provided for submission to jurisdiction in a proceeding in aid of arbitration, relying on the same authorities on which the Reinsurers here rely. The court rejected the argument, and the cases on which Lloyd's relied, and denied the motion to stay proceedings pending arbitration. In doing so, the court stated:

To accept Lloyd's interpretation and impose arbitration on Thiokol in this case however would not only construe the clauses in the insurer's favor, but also subvert, rather than harmonize, the service of suit clause to the arbitration clause.

A more harmonious interpretation of the policy is [that] ... [t]he service of suit clause grants Thiokol an explicit right to bypass arbitration by bringing Lloyd's to court in the United States in the event that Lloyd's fails to pay a claim submitted by Thiokol. The arbitration clause still has meaning because arbitration appears to be ... the exclusive forum for Thiokol in instances not addressed in the service of suit clause. It also provides an alternative forum for Thiokol in the specific instance where Lloyd's fails to pay a claim brought by Thiokol.

*Id.* at slip op. 9–14.

ported by the great weight of authority. Our interpretation of the reinsurance agreements before us comports with the plain language contained therein and our rules of contract construction. We are convinced that it is reflective of, and consistent with, the intent of the parties.

As we hold that the parties did not agree to arbitrate claims of failure to pay amounts due under the reinsurance agreements, the other arguments raised by the Reinsurers on this appeal are moot and need not be addressed. For the reasons detailed herein, the order of the trial court denying arbitration is affirmed.

All concur.