Robert MADDEN, Respondent,

v.

John S. ELLSPERMANN, Appellant.

No. WD 43821.

Missouri Court of Appeals,
Western District.

June 18, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Robert O. Lesley, Cheryl M. Gill, Stinsen, Mag & Fizzell, Kansas City, for appellant.

Dennis E. Egan, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

TURNAGE, Judge.

Robert Madden filed suit against Kidder, Peabody & Co., Inc. and John S. Ellspermann for breach of contract, wrongful termination and misappropriation of commissions. Kidder, Peabody and Ellspermann moved that the proceedings be stayed and the parties ordered to submit the matter to arbitration. The court sustained the motion of Kidder, Peabody and ordered that the dispute between Madden and the firm be arbitrated but overruled the motion of Ellspermann. Ellspermann appeals and contends that Madden signed a form which required the dispute between him and Madden be submitted to arbitration. Reversed and remanded.

Madden filed a petition against Kidder, Peabody and Ellspermann in three counts. The petition alleged that Kidder, Peabody and its office manager, Ellspermann, had requested Madden to leave his employment with E.F. Hutton and join Kidder, Peabody in a sales brokerage relationship. Madden alleged that he made certain demands which Kidder, Peabody would have to meet before he would be willing to agree to work for it. Among these demands was that Madden have a ten-year employment contract.

Madden alleged that he and Ellspermann signed a written employment agreement and attached a copy to the petition. The agreement does not specify that Madden would be employed for ten years.

Madden further alleged that he began employment with Kidder, Peabody on January 5, 1987. He alleged that Ellspermann notified him on March 21, 1988, that he was being terminated because he failed to notify Kidder, Peabody that he was purchasing an interest in Anchor Savings and Loan.

Madden alleged that Ellspermann acted individually and within the course and scope of his employment as the office manager of Kidder, Peabody in Kansas City. There are no allegations in the petition as to any individual acts taken by Ellspermann beyond the scope of his employment. The petition alleges that the act of Ellspermann in terminating Madden was done in the course and scope of his employment.

Ellspermann filed an answer in which he alleged that the court must compel arbitration because Madden agreed to arbitrate by signing a Uniform Application for Securities Industry Registration or Transfer (Form U–4). Form U–4 contained the following provision: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register...." The form indicated that Madden was registering with the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE).

Ellspermann filed an affidavit with the trial court and attached a copy of Sec. 8, ¶ 3708 of the NASD Code of Arbitration Procedure which provides that a dispute, claim or controversy arising out of or in connection with the business of any member shall be arbitrated at the instance of a person associated with a member against a person associated with a member.

As noted Ellspermann filed a motion to stay proceedings and order arbitration on Madden's petition. The court overruled the motion and Ellspermann has appealed.

Madden contends the order is not appealable because § 512.020, RSMo 1986[1] only allows an appeal from a final judgment and the order refusing to submit the dispute to arbitration is not a final judgment. Section 435.440 provides that an appeal may be taken from an order denying an application to compel arbitration made under § 435.-355. Section 435.355 states that on applica-

---

**1.** All sectional references are to RSMo 1986, unless otherwise indicated.

tion of a party showing an agreement to submit a controversy to arbitration, the court shall summarily determine the issue whether an agreement to arbitrate exists if the opposing party denies the existence of the agreement to arbitrate. If the court finds for the moving party it shall order arbitration, otherwise it shall deny the application. Here the court did not make a finding of whether or not there was an agreement to submit the controversy to arbitration. However, this court assumes all fact issues were resolved in accordance with the result reached. *Estate of Strauss v. Schaeffer*, 781 S.W.2d 274, 275[1, 2] (Mo. App.1989). While it would certainly be helpful to have the benefit of the trial court's findings, the statute does not require findings and the parties did not request any. It must therefore be assumed that the court found that there was no agreement to submit this dispute to arbitration.

■ There is a conflict between § 435.440 and § 512.020 because the former allows an appeal from an order which does not constitute a final judgment while the latter requires a final judgment before an appeal is allowed. When there is a conflict between two statutes, one of which deals with a subject in a general way and the second treats a part of the same subject in a more detailed way, the specific statute will govern. *O'Flaherty v. State Tax Com*, 680 S.W.2d 153, 154[2] (Mo. banc 1984). Section 512.020 deals with appeals in a general way but § 435.440 deals specifically with an appeal from an order denying an application to compel arbitration. In that instance the special statute allowing an appeal from an order denying arbitration will prevail and the order denying arbitration in this case is appealable.

■ Ellspermann contends that Madden signed the Form U–4 which required Madden to submit any controversy arising out of the business of Kidder, Peabody to arbitration and the court should have ordered arbitration.

Madden contends first that he is not obligated to have his claim against Ellspermann arbitrated because Ellspermann is not a signatory of the Form U–4. The question of nonsignatories being bound by an agreement to submit a dispute to arbitration has been raised in a number of cases. A case factually similar to the case at bar is *Thomas v. Perry*, 200 Cal.App.3d 510, 246 Cal.Rptr. 156 (1988). In that case Thomas sued his former employer, Kidder, Peabody, and two of its employees. The employees moved to compel arbitration pursuant to a Form U–4 which Thomas signed. Thomas resisted on the ground that the employees were not parties to the Form U–4 and therefore could not force Thomas to arbitration. The court held that by the allegations of Thomas' petition the employees were at all times acting on behalf of Kidder, Peabody in the course and scope of their employment. *Id.* 246 Cal. Rptr. at 159[3]. The court held that under those circumstances the employees were entitled to invoke the arbitration requirement. In *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185 (9th Cir.1986), the court held that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. *Id.* at 1187[2]. This question was also considered in *Arnold v. Arnold Corporation–Printed Communications for Business*, 920 F.2d 1269 (6th Cir.1990). The court held that the majority view expressed in *Letizia* is persuasive. The court noted that the acts charged against the nonsignatories were alleged to have been committed in the course and scope of their employment. The court held that it would "follow the well-settled principle affording agents the benefits of arbitration agreements made by their principal...." *Id.* at 1282[8].

Under the above cases it is clear that Ellspermann is entitled to arbitration even though he did not sign the Form U–4 signed by Madden. Madden alleged that all of Ellspermann's acts were committed in the course and scope of his employment. Further, Ellspermann is entitled to the benefit of an arbitration agreement to which

his employer, Kidder, Peabody, is a party.[2]

. ■ Madden further contends that Form U-4 requires arbitration of disputes arising out of and in connection with the business of a member and not disputes arising out of the private affairs of Madden. This argument is based upon the allegation in the petition that Ellspermann notified Madden that his employment was terminated because Madden had failed to inform Kidder, Peabody that Madden was purchasing an interest in Anchor Savings and Loan. Madden contends that his purchase of an interest in Anchor was personal business not connected with Kidder, Peabody and therefore his termination was unconnected with the business of Kidder, Peabody. This argument overlooks the fact that the employment of Madden by Kidder, Peabody to conduct its business is a matter arising out of and in the course of business of Kidder, Peabody. In like manner the termination of Madden's employment is a matter arising out of and in connection with the business of Kidder, Peabody. The reason given for the termination, even if related to a non-business subject, is unimportant. The essential ingredient is the termination of employment which is a matter arising out of the business of Kidder, Peabody.

■ Madden next contends that the rules of the NASD do not apply. In this argument Madden repeats his contention that Ellspermann is not a party to the Form U-4 and therefore is ineligible to request arbitration under that agreement. The fact that Ellspermann was not a signatory is dealt with above. Further, the Form U-4 provided that Madden agreed to arbitrate any dispute required to be arbitrated under the rules of the organizations with which he registered. Sec. 8, ¶ 3708 of NASD requires arbitration at the instance of a person associated with a member against a person associated with a member. Here, Ellspermann is associated with Kidder, Peabody who is a member of NASD

and he has a dispute with Madden who was associated with Kidder, Peabody at the time he signed the Form U-4. The plain language of Sec. 8, ¶ 3708 authorizes Ellspermann to have arbitration of this dispute with Madden.

Madden also contends that Ellspermann acted personally and, therefore, the dispute did not arise out of the business of Kidder, Peabody. There is no allegation in the petition as to any act committed by Ellspermann which was outside the scope of his employment. In *Letizia* the employees were not denied arbitration simply because they were alleged to have sought personal enrichment through an unauthorized "churning" of accounts. The only allegation Madden made with reference to Ellspermann personally was the bare statement that Ellspermann realized increased income for himself in terminating Madden. But in the same paragraph in which that statement appeared, Madden made the allegation that the acts of Ellspermann in terminating him were done in the course and scope of Ellspermann's employment. There are no allegations in the petition of any acts by Ellspermann except those within the course and scope of his employment. It is clear that the controversy between Ellspermann and Madden is concerned only with matters arising out of and in the course of business of Kidder, Peabody. That being the case, the Form U-4 requires that the dispute between Madden and Ellspermann be submitted to arbitration.

The order denying arbitration is reversed and this cause is remanded with directions to order the proceedings on Madden's suit against Ellspermann stayed and to order that this dispute be submitted to arbitration pursuant to the Form U-4. Costs are assessed against Madden.

All concur.

---

**2.** Madden also contends that § 435.350 provides that arbitration is not available with reference to contracts of adhesion. He states that the Form U-4 was an adhesion contract and therefore this dispute is not subject to arbitration.

This contention was not presented to nor passed upon by the trial court and may not be presented on appeal. *Centerre Bank of Branson v. Campbell,* 744 S.W.2d 490, 494[4] (Mo.App. 1988).