SPRINGFIELD IRON & METAL,
LLC, Appellant,

v.

Gregory WESTFALL and Mach
4, LLC, Respondent,

and

American Pulverizer, PCG Limited, LLC, Springfield Stockyard Development Co., LLC, Paul Griesedieck and Henry Christopher Griesedieck, III, Appellants.

No. SD 30993.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 3, 2011.

James N. Foster, Jr., Robert D. Younger, Brian C. Hey, McMahon Berger, P.C., St. Louis, MO, for Appellants.

Jerry M. "Jay" Kirksey, Kevin K. Fick, Kirksey Law Firm, LLC, Springfield, MO, for Respondent.

DANIEL E. SCOTT, Judge.

This interlocutory appeal arises from multi-claim business litigation. The plaintiff and one defendant were parties to an agreement with an arbitration clause. Third-party defendants, who had not signed the agreement, joined the plaintiff in a motion to compel arbitration of claims against them. The trial court ruled that the arbitration clause applied to and bound only its signatories and compelled only those parties to arbitrate.

We reject the non-signers' appeal, which seeks to compel arbitration against them as well, because arbitration is ultimately a matter of agreement between parties and fundamentally an issue of consent. The Missouri Supreme Court consistently so holds [1] and the arguments for exception here are not persuasive.

## Background

The background is complex. We relate only what is needed to understand the trial court's ruling and our decision.[2]

Brothers Paul and Chris Griesedieck, who own American Pulverizer Company ("APC") and Griesedieck Brothers, LLC ("GB"), wanted a third business to recycle

---

1. *See, e.g., State ex rel. Union Pac. R. Co. v. David,* 331 S.W.3d 666, 667 (Mo. banc 2011); *Netco, Inc. v. Dunn,* 194 S.W.3d 353, 361–62 (Mo. banc 2006); *Nitro Distributing, Inc. v. Dunn,* 194 S.W.3d 339, 351 (Mo. banc 2006); *Dunn Industrial Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 436 (Mo. banc 2003).

2. This three-year-old case is still at the pleadings stage. Our summary of "facts," gleaned from the scant appellate record, is offered mainly as context for readers of this opinion and does not obviate the need for proof at trial.

and process scrap metal, so they formed Springfield Iron & Metal, LLC ("SIM"). SIM's two members were GB and Greg Westfall, a scrap metal businessman hired as SIM's CEO. SIM's operating agreement had an arbitration clause by which the members agreed to arbitrate "any dispute, difference or disagreement" regarding the operating agreement and/or its "meaning and construction." Westfall signed SIM's operating agreement individually; GB did so by the brothers' signatures in their capacities as members of GB. Thereafter, APC made a loan to GB to buy land for SIM's business and helped SIM borrow $12 million to develop the property.

In November 2007, the Griesediecks (1) formed Springfield Stockyard Development Company ("SSDC"); (2) transferred ownership of SIM's business property from GB to SSDC; (3) dissolved and terminated SIM; (4) changed GB's legal name to that of the now-dissolved SIM (*i.e.*, "Springfield Iron & Metal, LLC"); and (5) formed PCG Limited, LLC ("PCG") and made themselves its sole members. Westfall claims that at least some of these actions transpired without his knowledge or consent.

In May 2008, the brothers proposed to Westfall a new ownership arrangement. No agreement was reached and Westfall was fired on May 31.

GB [3] sued Westfall one month later and filed an amended petition in March 2009.[4] Westfall countered with claims against the Griesediecks, GB, SSDC, APC, and PCG, all of whom moved to compel arbitration based on SIM's operating agreement. Westfall countered that only the agreement's signers were subject to arbitration. Moreover, Westfall argued, GB had waived its arbitration right by initiating the lawsuit.

■ After a hearing, the trial court ruled that "those who signed the original agreement are bound by the arbitration clause," but Westfall "is not bound to arbitrate with unsigned claimants." Upon motion for reconsideration and another hearing, the court declined to change its ruling and reiterated that "[o]nly those parties signing the agreement are bound to arbitrate. The Court will stay proceedings pending arbitration results. The Court will proceed as a forum for all issues presented." This appeal followed.[5]

### Overarching Principles and Central Issue

■ "Arbitration is fundamentally a matter of consent." *David*, 331 S.W.3d at 667. The "overarching rule [is] that arbitration is ultimately a matter of agreement" between parties. *Netco*, 194 S.W.3d at 361–62; *Nitro*, 194 S.W.3d at 351. "A party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn*, 112 S.W.3d at 436 (quoted in *Netco*, 194 S.W.3d at 359; *Nitro*, 194 S.W.3d at 345).

The central issue here is whether there is a valid contractual basis to compel arbitration of claims involving the non-signers. *David*, 331 S.W.3d at 667. Appellants al-

---

3.  We refer to the plaintiff as GB, its original name, to distinguish it from the now-dissolved SIM whose name the plaintiff now uses and whose operating agreement is central to the case.

4.  GB also sued Mach 4, LLC, a company that Westfall had formed.

5.  The trial court's order effectively granted the motion to compel in part and denied it in part. GB received the relief it requested, but the non-signers did not. The denial of a motion to compel arbitration is appealable. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 n. 2 (Mo. banc 2009); RSMo § 435.440.1(1).

lege two bases for doing so—close relationship and estoppel.

## Point I—Close Relationship

■ These non-signers urge that they "are entitled to the benefit of arbitration" because each had a "close relationship" with GB and non-arbitration of their claims "would eviscerate" SIM's operating agreement. Our supreme court rejected similar claims in *Netco* and *Nitro,* which were companion cases involving a web of Amway-related entities. To compel arbitration of non-signatory claims—even those "inextricably intertwined" with signatory claims—"is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties." *Netco,* 194 S.W.3d at 361–62; *Nitro,* 194 S.W.3d at 351.

■ The secondary arguments of the respective non-signers fare no better.

### *Paul and Chris Griesedieck*

■ We reject the Griesediecks' argument that, as GB's agents, they share GB's power to compel arbitration under the operating agreement. The agreement does not name the Griesediecks as parties or treat them as such, nor did they sign it as individuals, but only as members of GB.[6] By signing only as agents in a representative capacity, the Griesediecks are not bound by or to the agreement as individuals. *See Lawrence,* 273 S.W.3d at 529. "[I]t is the principal that can be bound by the signature of the agent, not the agent that can be bound by the signature of the principal." *Netco,* 194 S.W.3d at 358; *Nitro,* 194 S.W.3d at 345.[7]

### *SSDC, PDG, and APC*

SSDC, PDG, and APC emphasize their "close relationship" with GB. If these companies would have us disregard their separate identities, "the only way to achieve that result is by piercing the corporate veil." *Nitro,* 194 S.W.3d at 348. At oral argument, these companies claimed piercing would be inappropriate, which in our view ends the inquiry.

### *Convenience*

■ Finally, Appellants call it "only logical" and efficient for everyone to arbitrate, and raise the specter of inconsistency if some claims are arbitrated and others are not. Nonetheless, our supreme court deems arbitration a matter of agreement, even if arbitrated and non-arbitrated issues are "inextricably intertwined." *Netco,* 194 S.W.3d at 361–62; *Nitro,* 194 S.W.3d at 351. The *Netco/Nitro* result was that some, but not all, parties had to arbitrate some, but not all, claims.

---

6. In contrast to Westfall, whose name is throughout the operating agreement, the brothers are named only in a signature block which reads "Griesedieck Brothers, LLC By:" followed by the brothers' signatures and the words "Paul Griesedieck, Member" and "Chris Griesedieck, Member" under those signatures.

7. The Griesediecks cite *Welch v. Davis,* 114 S.W.3d 285 (Mo.App.2003) and *Madden v. Ellspermann,* 813 S.W.2d 51 (Mo.App.1991) in support of their agency argument. *Madden's* treatment of non-signatory agents was cited with approval in *Byrd v. Sprint Communications Co.,* 931 S.W.2d 810, 815 (Mo.App. 1996). In *Welch,* the Western District cited *Madden* and *Byrd,* yet signaled a retreat, acknowledging that it "painted with too broad a brush in *Byrd.*" 114 S.W.3d at 289 n. 1. Three years later, the Missouri Supreme Court agreed, specifically overruling *Byrd* on this issue and holding that non-signatory agents are not bound by arbitration agreements signed by their principals. *Netco,* 194 S.W.3d at 358–59; *Nitro,* 194 S.W.3d at 345. Although *Welch* and *Madden* were not specifically mentioned, these cases no longer persuasively support the Griesediecks' argument.

■ We are not free to erode arbitration's voluntary nature for the sake of judicial convenience. Westfall did not agree to arbitrate with these non-signers who, like their *Nitro* counterparts, "stay in the case" but "cannot compel arbitration because they are not signatories." 194 S.W.3d at 350. Point denied.

### Point II—Estoppel

■ Point II asserts estoppel. Appellants argue that Westfall cannot "formulate his claims against the non-signatories yet disavow the part of the [operating] agreement that contains the arbitration provision." We find estoppel inapplicable based on our supreme court's rejection of it in *Netco* and *Nitro.*

Estoppel in this context usually involves a defendant alleged to be liable under the terms of a contract he did not sign (*e.g.,* a third-party beneficiary). *Netco,* 194 S.W.3d at 361; *Nitro,* 194 S.W.3d at 350. It would be unfair, when a plaintiff sues a non-signatory for breach of contractual terms, not to enforce the arbitration clause as well. *Id.*

Westfall's largely tort-based claims against Appellants, like those in *Netco* and *Nitro,* do not fit the description above or allege that non-signers are liable under the terms of the operating agreement. Estoppel does not lie. Point II fails.

### Conclusion

Finding no merit in Appellants' claims on appeal, we affirm the trial court's arbitration order.[8]

FRANCIS, P.J., and BATES, J., concur.

---

8. Westfall did not file a cross-appeal, so we disregard his complaint that GB waived any right to compel arbitration by pursuing litigation. It is unclear, for that matter, that a cross-appeal would lie. *See Deiab v. Shaw,* 138 S.W.3d 741, 743 (Mo.App.2003).