Darryl T. JONES, et al., Plaintiffs–
Respondents,

v.

Gregg PARADIES, et al., Defendants–
Appellants.

No. ED 97619.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 29, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 7, 2012.

Application for Transfer Denied
Sept. 25, 2012.

John Gianoulakis, David A. Castleman, St. Louis, MO, for appellants.

Gary R. Srachan, Drey A. Cooley, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

 At the heart of this appeal is the question of whether the defendants, who were non-signatories, may enforce a contractual arbitration clause. We answer in the negative. Plaintiffs sued the defendants for tortiously interfering and con-spiring to tortiously interfere with a contract. Defendants served as directors of a corporation that was bound by an arbitration agreement. But the plaintiffs sued the defendants in their individual capacity and not as agents of the corporation. The defendants sought to enforce the arbitration provision contained in the contract with the corporation, and thus moved to dismiss or stay the litigation pending arbitration. The trial court denied defendants' request, reasoning that the defendants, as individuals, were not bound by or to the contract or its arbitration clause. The defendants appeal.[1]

### *Factual and Procedural Background*

This dispute arises out of battle for control of the concessions business at Lambert–St. Louis International Airport.[2] The entities involved are numerous, and their relationships and history complex. Those particulars are not germane to the instant appeal. Suffice it to say, a corporation commonly known by the name of PCA entered into a Management Agree-

---

1. At the outset, we must address whether the defendants may appeal from the denial of their motion to dismiss. Generally, the trial court's denial of a motion to dismiss is not a final, appealable judgment. However, the defendants' motion here sufficiently raised the arbitration issue before the trial court. Hence, we shall treat their motion as one to compel arbitration, the denial of which is appealable pursuant to Section 435.440. *Kagan v. Master Home Products Ltd.*, 193 S.W.3d 401, 404 n. 3 (Mo.App. E.D.2006).

We also must address defendants' contention that the trial court lacked subject-matter jurisdiction to decide the enforceability or applicability of the arbitration clause that calls for arbitration to take place outside of Missouri. This is a civil case. The circuit court, therefore, had constitutionally-vested subject-matter jurisdiction over the dispute. *Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009); Mo. Const. art. V, § 14. Defendants cite five cases in support of their proposition. *Gov't e-*

*Mgmt. Solutions, Inc. v. Am. Arbitration Assoc., Inc.*, 142 S.W.3d 857 (Mo.App. E.D. 2004); *H.T.I. Corp. v. Lida Mfg. Co.*, 785 S.W.2d 110 (Mo.App. W.D.1990); *Ascension Health v. Coop. Health Care Ventures, LLC* (No. 09SL–CC0908, 2009); *PerfectStop Partners, L.P. v. U.S. Bank*, 231 S.W.3d 260 (Mo. App. W.D.2007); and *Teltech, Inc. v. Teltech Comm.*, 115 S.W.3d 441 (Mo.App. W.D.2003). The cases were all decided prior to *Webb*. Quite perplexingly, defendants fail to even mention the Supreme Court's signature decision regarding jurisdiction, let alone the impact of that decision on these prior cases. Given these briefing deficiencies, the defendants have abandoned their claim that the trial court lacked subject-matter jurisdiction. *Carlisle v. Rainbow Connection, Inc.*, 300 S.W.3d 583, 585 (Mo.App. E.D.2009)(contentions not supported by relevant authority deemed abandoned). We deny this point.

2. We set forth the facts as represented in the plaintiffs' petition.

ment with three entities—The Paradies Shops, Concessions, and Arch—whereby the three entities agreed to manage and operate the airport concessions business inexchange for a percentage of annual sales.[3,4]

This Management Agreement contains the disputed arbitration clause. The arbitration clause provides in part that "[a]ny controversy or claim arising out of or relating to [the] agreement, or the breach thereof, shall be settled by arbitration in Atlanta, Georgia...." The Management Agreement was signed by representatives of the involved entities in their corporate capacities. The defendants here were associated with the three entities managing and operating the airport concessions.[5] They were also on the board of directors for PCA. While some of the defendants signed the Management Agreement in their corporate capacity, none of the defendants signed the Management Agreement in their individual capacity.

Years later, the board of directors for PCA voted to terminate Arch as a manager under the Management Agreement, and to sell all of PCA's assets to a newly-created limited-liability company. At the time, the corporate directors of PCA consisted of all the defendants and plaintiffs Donald Suggs and William Jones, who were also partners in Arch.[6] All directors, except Mr. Suggs and Mr. Jones, voted in favor of Arch's termination and the asset sale. As a result of this sale, all defendants are affiliated through equity ownership and/or management with the new lim-

ited-liability company. The plaintiffs and Arch are not.

The plaintiffs, all partners in Arch, sued the defendants in their individual capacities for tortious interference with contract and conspiracy to tortiously interfere with contract. Plaintiffs alleged that the defendants conspired to, and did in fact, tortiously interfere with the Management Agreement by authorizing and approving PCA's termination of Arch as manager "through improper means, not for the benefit of PCA but for defendants' own financial gain and self-interest" and in retaliation for the refusal by Mr. Suggs and Mr. Jones to consent to the restructuring of PCA into a limited-liability company.

Defendants moved to dismiss or stay the litigation pending adjudication of the matter, including any questions regarding the enforceability of the arbitration clause, by an arbitrator or a court in Georgia. Despite defendants' request, there was no arbitration actually pending at the time the defendants filed their motion. The trial court denied defendants' motion, reasoning that the defendants, as individuals, were not bound by or to the Management Agreement or its arbitration clause.

The defendants maintain that they may enforce the arbitration clause and thus appeal. Defendants first assert that the plaintiffs are estopped from denying the enforceability of the arbitration clause. Next, they contend that they may enforce the arbitration clause, even though they

---

3. Formally, PCA is Paradies–Concessions II–Arch, Inc.; the three entities are The Paradies Shops, Inc., Concessions II, and Arch Concessions Partnership I.

4. PCA was under contract with the City of St. Louis to manage and operate the news and gift concessions business at the airport.

5. Gregg Paradies, Don Marek, Charlene Yde, and Patrick Wallace were shareholders, offi-

cers, directors, employees, representatives and/or affiliates of The Paradies Shops. Nancy Cooke was a member, representative, affiliate and/or associate of Concessions. Audrey Robinson Jones is a former partner in Arch.

6. The remaining plaintiffs—Darryl Jones, Dina Suggs, and Jennifer Jones—were partners in Arch but not directors of PCA.

signed the agreement only as representatives of a corporation, because they were acting for the corporation, and thus are considered as being the corporation itself for purposes of plaintiffs' tortious-interference claims. And lastly, the defendants allege they may enforce the arbitration clause, even as non-signatories, because plaintiffs' claims derive from a contract claim covered by the arbitration clause.

## Discussion

The underlying principles of arbitration are well-established and often stated. Arbitration is fundamentally a matter of consent, and thus a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. *State ex rel. Union Pacific R. Co. v. David*, 331 S.W.3d 666, 667 (Mo. banc 2011). "Absent a contract to arbitrate, no party has a unilateral right to impose on another party a requirement of arbitration as the sole procedure for dispute resolution." *M & I Marshall & Ilsley Bank v. Sader & Garvin, L.L.C.*, 318 S.W.3d 772, 777 (Mo.App. W.D.2010)(internal quotation omitted). "It is a firmly-established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have agreed to arbitrate claims." *Id.* Correspondingly, it logically follows that one cannot enforce an arbitration agreement if he is not a party to that agreement. *See Springfield Iron & Metal, LLC v. Westfall*, 349 S.W.3d 487, 490 (Mo. App. S.D.2011)(holding that individuals who signed arbitration agreement only as agents in a representative capacity not bound by or to the agreement as individuals, and thus may not compel arbitration).

For defendants to enforce the arbitration agreement here, they must be a party to that agreement. But defendants signed that agreement only in their corporate capacity. They are being sued, however, and are seeking to enforce the agreement, in their individual capacity. As a matter of agency law, it is the principal that can be bound by the signature of the agent, not the agent that can be bound by the signature of the principal. *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006); *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 358 (Mo. banc 2006). Thus, defendants' signatures, in their corporate capacity, do not bind them to the arbitration agreement as individuals. *Springfield Iron & Metal*, 349 S.W.3d at 490.

Defendants contend that they may nonetheless enforce the arbitration clause, even as non-signatories, because they are being sued based on their actions as corporate directors. Thus, they contend, because they were acting for the corporation, they are treated as being the corporation itself for purposes of plaintiffs' tortious-interference claims. Defendants cite *Zipper v. Health Midwest*, 978 S.W.2d 398 (Mo.App. W.D.1998) and *Fields v. R.S.C.D.B., Inc.*, 865 S.W.2d 877 (Mo.App. E.D.1993). These cases, however, are factually distinct. *Zipper* and *Fields* hold that if an officer or agent of a corporation is acting for that corporation, then the officer is the corporation for the purposes of a tortious-interference claim. *Zipper*, 978 S.W.2d at 419; *Fields*, 865 S.W.2d at 879. In those cases, the plaintiffs alleged that the officer was acting on behalf of the corporation. That is not what plaintiffs have pleaded here, however. Unlike the pleadings in *Zipper & Fields*, the plaintiffs here did not allege that the defendants were acting for the corporation. To the contrary, the plaintiffs have alleged that the defendants acted through improper means, not for the benefit of the corporation, but for defendants' own financial gain and self-interest. In short, plaintiffs have alleged that the defendants were acting for themselves—

not for the corporation. Thus, *Zipper* and *Fields* are inapposite. We reject the defendants' argument, and hold that the defendants are not bound by or to the agreement as individuals, and therefore may not enforce that agreement.

Defendants assert that the plaintiffs are estopped from denying the enforceability of the arbitration clause. A signatory to a contract containing an arbitration agreement may, in limited circumstances, be estopped from denying the applicability of the arbitration clause to a non-signatory where the signatory has sued the non-signatory for breach of the terms of the contract. *See Nitro Distributing,* 194 S.W.3d at 350. The basis for applying estoppel in this context is that it would be unfair, when a plaintiff sues a non-signatory for breach of contract, not to enforce the arbitration clause contained in that contract as well. *Id.* Here, however, the plaintiffs have not sued defendants for breach of the Management Agreement or any of the duties thereunder. Rather, the plaintiffs have sued defendants in tort. Estoppel does not lie. *Id.*; *Netco,* 194 S.W.3d at 361; *Springfield Iron & Metal,* 349 S.W.3d at 491.

Lastly, defendants insist that they may compel arbitration, even as non-signatories to the agreement, because the claims against them derive from a hypothetical breach-of-contract claim against the signatory, PCA, that is covered by the arbitration clause. We have rejected such an argument before; we reject it again today. To compel arbitration of claims against a non-signatory—even if those claims are "inextricably intertwined" with signatory claims—is inconsistent with the overarching principle that arbitration is ultimately a matter of agreement between the parties. *Nitro Distributing,* 194 S.W.3d at 351; *Netco,* 194 S.W.3d at 361–62; *Springfield Iron & Metal,* 349 S.W.3d at 490–91. No matter how intertwined given claims are or how derivative one claim is of another, the parties must have agreed to arbitrate in order for one to compel arbitration. *Id.* The parties made no such agreement,

We affirm the trial court's judgment.

KATHIANNE KNAUP CRANE, P.J., concurs.

KENNETH M. ROMINES, J., concurs in result only.