

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ANDREA M. CURNS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85486 |
| | ) | |
| PHYLLIS AKINS, | ) | Opinion filed: |
| | ) | |
| Appellant. | ) | April 11, 2023 |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE BRYAN ROUND, JUDGE**

Division One:  Anthony Rex Gabbert, Presiding Judge,
W. Douglas Thomson, Judge and Janet Sutton, Judge

Phyllis Akins appeals from the trial court's denial of her motion to compel arbitration with Andrea Curns.  Akins argues that Curns, who is bound by a mutual arbitration agreement with Curns's employer Aerotek, Inc., must arbitrate Curns's claim against Akins because Akins, as an employee of Aerotek's customer, is a third-party beneficiary to the mutual arbitration agreement.  We affirm.

## Factual and Procedural History

This action stems from an agreement between Andrea Curns and her employer, Aerotek, Inc. ("Aerotek") requiring arbitration of certain claims.   In the underlying petition for damages, Curns alleged that Aerotek, Inc. ("Aerotek"), a staffing agency, and

St. Joseph Medical Center (the "Center") discriminated against her after she was involved

in an altercation with a Center employee, Phyllis Akins.[1]

Before this dispute, Aerotek employed Curns to work as a billing specialist at the

Center. Curns completed Aerotek's new employee onboarding process. As part of this

process, Curns signed a document titled "Mutual Arbitration Agreement" (the

"Agreement") on July 24, 2019.

The Agreement states in relevant part,

> Except (i) as expressly set forth in the section, "Claims Not Covered by this Agreement," all disputes, claims, complaints, or controversies ("Claims") that I may have against Aerotek, Inc. and/or any of its subsidiaries, affiliates, officers, directors, employees, agents, and/or any of its clients or customers (collectively and individually the "Company"), or that the Company may have against me, including contract claims; tort claims; discrimination and/or harassment claims; retaliation claims; claims for wages, compensation, penalties, or restitution; and any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to my application for employment with the Company, and/or my employment with the Company, and/or the terms and conditions of my employment with Company, and/or termination of my employment with the Company (collectively "Covered Claims"), are subject to confidential arbitration pursuant to the terms of this Agreement and will be resolved by Arbitration and NOT by a court or jury. The parties hereby forever waive and give up the right to have a judge or a jury decide any Covered Claims.

The Agreement also states that it "is governed by the [Federal Arbitration Act ("FAA")]

and, to the extent not inconsistent with or preempted by the FAA, by the laws of the state

of Maryland without regard to principles of conflicts of law."

In April 2020, Curns filed a petition in circuit court against Aerotek, the Center,

and Akins. Curns, a black Aerotek employee, alleged employment discrimination against

---

[1] Curns's petition does not allege that Akins is an employee of the Center and merely refers to her as a "co-worker," however, all the parties in their briefings acknowledge that Akins was employed by the Center during the events relevant to this appeal, while Curns was employed by staffing agency Aerotek.

Aerotek and the Center, and assault and battery against Akins. In her petition, Curns alleged, "On December 27, 2019, while cleaning up after a meal at the Center, an altercation arose between [Curns] and Defendant [Akins] during which Defendant [Akins] physically attacked [Curns]." Curns alleged that Akins, a white Center employee, struck Curns on the hands and told Curns to not touch Akins's belongings. Curns alleged that she reported the incident to several Center supervisors and that "Defendant [Center] and/or Defendant Aerotek failed to take appropriate corrective action as to Defendant [Akins] regarding Defendant [Akins's] physical attack on [Curns]." Curns alleged that she was fired in early January after being falsely accused of sleeping on the job. According to Curns's Petition, she was fired because she was involved in an altercation with Akins and/or reported that altercation to her superiors at the Center.

After Curns filed her petition, all three defendants filed motions to compel arbitration.[2] Both the Center and Akins argued that Curns entered into a valid, enforceable arbitration agreement and that they are third-party beneficiaries of that Agreement.

On June 15, 2022, the trial court entered an order granting the Center's motion to compel arbitration and denying Akins's motion to compel arbitration.

The trial court also determined that the validity of the Agreement is determined by applying Missouri law. Applying Missouri law, the trial court found that Akins cannot compel arbitration as either a third-party beneficiary or under the doctrine of equitable estoppel. The trial court concluded, "The terms of the [A]greement do not specifically bind employees of [Aerotek's] 'customers and clients' and do further not [sic] specifically

---

[2] Curns later voluntarily dismissed Aerotek, and they are not part of this appeal.

3

extend to the alleged intentional, wrongful acts of a third-party beneficiary's employees." The trial court also found that the Agreement was valid and applied to Curns's employment discrimination and retaliation claims against Aerotek and the Center. The trial court found that the Center is a third-party beneficiary to the Agreement and has the authority to compel arbitration.

This appeal follows.

## Standard of Review

"The issue of whether arbitration should be compelled is a question of law subject to *de novo* review." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014) (citing *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006)). "'Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so.'" *Central Trust Bank v. Graves*, 495 S.W.3d 797, 802 (Mo. App. W.D. 2016) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

## Analysis

Akins brings one point on appeal. She argues that the trial court erred in denying her motion to compel arbitration because she maintains the same right to enforce the Curns-Aerotek arbitration agreement as Akins's employer, the Center, who, as a client of Aerotek, is a third-party beneficiary of such agreement.

**Choice of Law**

Before addressing Akins's point on appeal, we first must determine the state law applicable to this appeal. The Agreement contains the following choice of law provision: "This Agreement is governed by the FAA and, to the extent not inconsistent with or preempted by the FAA, by the laws of the state of Maryland without regard to principles

of conflicts of law. Aerotek, Inc's business and [Curns'] employment with Aerotek, Inc affect interstate commerce."

We generally enforce choice of law provisions. *See Grp. Health Plan, Inc. v. BJC Health Sys., Inc.*, 30 S.W.3d 198, 203 n.2 (Mo. App. E.D. 2000). However, neither the parties nor the trial court acknowledges this choice of law provision and all use the FAA and Missouri law in their analyses. "Parties to a contract may waive the provisions of their contract by their conduct." *JTL Consulting, LLC v. Shanahan*, 190 S.W.3d 389, 396 (Mo. App. E.D. 2006) (citing *Pilla v. Estate of Pilla*, 689 S.W.2d 727, 730 (Mo. App. E.D. 1985) (holding that parties to a contract waived the contract's choice of law provision by not citing the provision or any law from the state preferred by the contract).

Here, the parties have waived the choice of law provision in the Agreement through their conduct. Neither party has cited to applicable Maryland law in their briefs, nor was Maryland law addressed in their motions before the trial court. Further, neither party has addressed the choice of law provision in their briefing. We will follow their lead and apply the FAA and Missouri law to Akins's argument on appeal.

**Point I**

The Agreement and the parties stipulate that the Agreement is governed by the FAA. "[T]he question of which parties are bound by an arbitration agreement concerning interstate commerce 'involves the 'general law' of contracts and agency.'" *Tractor-Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 629 (Mo. App. E.D. 1994) (quoting *Flink v. Carlson*, 856 F.2d 44, 46 n.2 (8th Cir. 1988)). Courts apply state contract and agency law in determining enforceability issues, "giving due regard to the federal policy favoring arbitration." *Id.* (internal quotation and citation omitted).

5

"When faced with a motion to compel arbitration, [we] must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). Therefore, we must first determine whether the Agreement has the elements of a valid contract under Missouri law: offer, acceptance, and consideration. *See Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. App. W.D. 2010).

Neither party disputes that the Agreement is a valid and enforceable contract. During the onboarding process, Aerotek offered the Agreement, and Curns accepted it by signing it. The Agreement was entered into "[a]s consideration for [Curns's] application for and/or [Curns's] employment with Aerotek, Inc. and for the mutual promises herein." The Agreement requires both Curns and Aerotek to submit any claims one may have against the other to arbitration. In other words, Curns and Aerotek mutually promise to arbitrate any claims. Thus, the promise to arbitrate contained in the Agreement was a mutual promise and had sufficient consideration. *See, e.g., Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 23-24 (Mo. App. W.D. 2008) (noting that Missouri courts have upheld arbitration agreements when both parties agree to submit claims to arbitration).

Having determined that Curns and Aerotek entered into a valid, enforceable arbitration agreement, we must determine whether *Akins*, an employee of a customer of Aerotek, can enforce the Agreement and compel Curns to arbitrate her claims against Akins. Akins argues that she, like the Center, is a third-party beneficiary to the Agreement even though she did not sign the Agreement.

"Only parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007). "A third party beneficiary is one who is not privy to a contract but

6

who is benefited by it and who may maintain a cause of action for its breach." *Volume Servs., Inc. v. C.F. Murphy & Assoc.*, 656 S.W.2d 785, 794 (Mo. App. W.D. 1983). "To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Nitro Distributing, Inc.*, 194 S.W.3d at 345. Whether the parties intended to benefit any third parties must be gleaned from the four corners of the contract. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 260 (Mo. banc 2002). When a contract lacks an express declaration of intent to benefit a party, "there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves." *Nitro Distributing, Inc.*, 194 S.W.3d at 345.

We turn to the Agreement to determine whether Akins is a third-party beneficiary. The Agreement expressly covers "all disputes, claims, complaints, or controversies ('Claims') that [Curns] may have against Aerotek, Inc, and/or … any of *its clients or customers*… or that the Company may have against [Curns]." (emphasis added). The Agreement's plain language expressly benefits Curns, Aerotek, and the Center as Aerotek's "client or customer."

However, although it is evident that Center is a third-party beneficiary of the Agreement's arbitration clause, the plain language of the Agreement does not extend to Center's employees like Akins. While the Agreement clearly benefits *Aerotek's employees*, there is no clear expression of intent in the Agreement to benefit *employees* of Aerotek's customers or clients, such as Center's employees like Akins, or to name such an identifiable class as a whole. Such a distinction is meaningful, because the Agreement clearly intends to cover claims between Aerotek's employees and Aerotek's customers and clients, but does not include the *employees* of Aerotek's customers and clients. Rather,

7

the Agreement is silent as to such identifiable class. We cannot interpret such silence as benefitting Akins. *See Nitro Distributing, Inc.*, 194 S.W.3d at 345.

Akins attempts to overcome the plain language of the Agreement by arguing that she "maintains the same right to enforce the Agreement as" the Center because she is an employee of the Center. Essentially, she argues that she is a third-party beneficiary to the Agreement because her employer is a third-party beneficiary. Akins relies principally on several Missouri federal and state decisions. *See Morgan v. Ferrellgas, Inc.*, 8 F.4th 795 (8th Cir. 2021); *Sprague v. Household Intern.*, 473 F. Supp. 2d 966 (W.D. Mo. 2005); *Tractor-Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627 (Mo. App. E.D. 1994); *Madden v. Ellspermann*, 813 S.W.2d 51 (Mo. App. W.D. 1991). Akins argues these cases hold that a non-signatory employee can enforce an arbitration agreement to the same extent as her employer.

None of the cases Akins cites are instructive. The cases upon which Akins relies address scenarios where an employee was being sued for actions they took either in the scope of their employment with the third-party beneficiary employer or where an employee and employer are treated as a "single unit." *See Morgan*, 8 F.4th at 800 (employee could enforce an arbitration agreement because the plaintiff alleged employee acted on behalf of employer in making tortious misrepresentations and omissions); *Sprague*, 473 F.Supp.2d at 977 (arbitration agreement was enforceable as to non-signatory individuals because the plaintiffs alleged in their complaint that "each of the Defendants were agents or joint venturers of each of the other Defendants, and in doing the acts alleged herein acted within the course [or] scope of such agency."); *Madden*, 813 S.W.2d at 53 (collecting cases where courts have held that employees can enforce an

arbitration agreement for alleged actions they took in the course and scope of their employment).

Unlike the cases Akins cites, here Akins is not being sued for actions she allegedly took in the scope of her employment nor is she treated as a "single unit" with the Center. Curns does not allege that Akins undertook any action in the course and scope of Akins's employment. In fact, Curns does not even identify Akins by who Akins is employed, instead referring to her as a "co-worker." Rather, Curns alleges only that Akins was angry, struck Curns, and told Curns not to touch Akins's things. None of these allegations stem from Akins's employment relationship with the Center nor does Curns allege same.

Curns's claims against Akins and the Center are also distinct. She does not treat Akins and the Center as a "single unit." Notably, Curns never alleges that the Center is vicariously liable for Akins's actions in the alleged assault. Accordingly, Curns is not alleging that the Center is somehow liable for Akins's alleged assault. Nor does Curns allege that Akins assaulted her with discriminatory intent, and she is not suing Akins for discrimination. Conversely, all of Curns's allegations against the Center stem from their response to Curns reporting the alleged assault and her eventual termination. Akins cannot benefit from the Agreement in which her employer is a third-party beneficiary for alleged actions she took outside the scope of her relationship with her employer. *See Jones v. Paradies*, 380 S.W.3d 13, 17 (Mo. App. E.D. 2012) ("[T]he plaintiffs here did not allege that the defendants were acting for [their employer]. To the contrary, the plaintiffs have alleged that the defendants acted through improper means, not for the benefit of [their employer], but for defendants' [own self-interest].").

Finally, Akins argues that the trial court's ruling is in error because it "results in two parallel and overlapping proceedings," which is more expensive and less efficient for

the parties.  Akins argues that her claims are "inextricably intertwined" with Curns's other claims, which are subject to arbitration.

Even if we agreed with Akins that her claims are "inextricably intertwined" with Curns's claims against the Center, the Missouri Supreme Court has twice rejected this argument in enforcing arbitration agreements. *See Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361-62 (Mo. banc 2006); *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 351 (Mo. banc 2006).  In these cases, plaintiffs filed lawsuits against multiple defendants alleging the defendants were involved in conspiracies to misappropriate the plaintiffs' businesses, matters outside the contract that compelled arbitration. *Netco, Inc.*, 194 S.W.3d at 357; *Nitro Distributing, Inc.*, 194 S.W.3d at 345.  Some of the defendants in each case filed motions to compel arbitration pursuant to several business contracts, all of which were overruled. *Netco, Inc.*, 194 S.W.3d at 357; *Nitro Distributing, Inc.*, 194 S.W.3d at 345. The defendants argued that even if they were not third-party beneficiaries to the various contracts they should be able to compel arbitration because the doctrine of equitable estoppel prevents the plaintiffs from refusing to arbitrate claims that are "inextricably intertwined" with claims subject to arbitration.[3] *Netco, Inc.*, 194 S.W.3d at 361-62; *Nitro Distributing, Inc.*, 194 S.W.3d at 351.

---

[3] The Court also noted, "Under hornbook rules of agency, it is the principal that can be bound by the signature of the agent, not the agent that can be bound by the signature of the principal.  This is so because the principal can control the conduct of the agent, which is the essence of the agency relationship. *Netco, Inc.*, 194 S.W.3d at 358. While this rule is not perfectly applicable in this case, because neither the Center nor Akins as the Center's agent are signatories to the Agreement, this rule is still instructive. Under this rule, the Center could be bound by an agreement entered into by Akins, but Akins, as the Center's agent, cannot be bound by an agreement entered into by the Center. Therefore, the Agreement does not bind Akins simply because the Center is a third-party beneficiary to it. *See also Springfield Iron & Metal, LLC v. Westfall*, 349 S.W.3d 487, 490 (Mo. App. S.D. 2011) (when agents sign an arbitration agreement in a representative capacity, they are not bound by the agreement as individuals).

The Missouri Supreme Court disagreed, holding that the doctrine of equitable estoppel is inapplicable because the plaintiffs were not alleging that the defendants failed to perform under the business contracts, but were alleging other misconduct. *Netco, Inc.*, 194 S.W.3d at 361-62; *Nitro Distributing, Inc.*, 194 S.W.3d at 351. In both cases, the Missouri Supreme Court held that such an "[inextricably intertwined claims] theory is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties." *Netco, Inc.*, 194 S.W.3d at 361-62; *Nitro Distributing, Inc.*, 194 S.W.3d at 351.

Like the plaintiffs in *Netco, Inc.* and *Nitro Distributing, Inc.*, Curns is not alleging that Akins failed to perform as part of Curns's employment contract. Curns's claims against Akins are outside the scope of any employment contract and the doctrine of equitable estoppel does not apply. As such, "[w]e are not free to erode arbitration's voluntary nature for the sake of judicial convenience." *Springfield Iron & Metal, LLC v. Westfall*, 349 S.W.3d 487, 491 (Mo. App. S.D. 2011). We cannot compel Curns to arbitrate her claims against Akins merely because it is more convenient to do so.

Akins is not a third-party beneficiary to the Agreement and cannot compel Curns to arbitrate her claims against Akins. Point I is denied.

**Conclusion**

The trial court's judgment is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

11